### SAM BERRY v. THE STATE.

#### *No. 1155.   Decided January 13th, 1897.*

**1.   Theft of Cattle—Recent Possession Unexplained—Charge.**

On a trial for theft of one head of cattle, a charge to the jury, to the effect, that if the defendant had possession of the property and refused and failed to give an account of his possession, then before they could convict upon the circumstances of such possession alone, they must be satisfied that his possession was personal, recent, exclusive and unexplained, and involved a distinct and conscious assertion of property by the defendant; and, if either of these constituents were wanting defendant was entitled to be acquitted, is a charge upon the weight of evidence and erroneous. Following, Wheeler v. State, 34 Tex. Crim. Rep., 350.

**2.   Same—Proper Charge.**

On a trial for theft of one head of cattle, where the evidence was, that the animal took up with and ran with defendant's cattle, and was branded by defendant's son without defendant's knowledge or consent; and defendant exercised no ownership or control over it—a direct and pertinent application of the law upon the question of theft, would have been simply to submit the facts in the charge with an instruction, that if the jury believed that defendant fraudulently took the animal and claimed it, he would be guilty, but if he did not, and the animal was taken and branded by his son without participation by defendant, then defendant would not be guilty of the theft.

**3.   Same—Evidence—Cross-Examination of a Witness.**

On a trial for cattle theft, where defendant had testified, that he had three cows and several yearlings with which the animal in question ran, and that he had pointed this animal out to one J., and asked him, if he knew its owner, and the State put J. upon the stand, who testified, that he knew defendant's cattle well, but denied that he had ever seen the animal in question and that defendant had ever spoken to him

about it; that he knew the animal well. Held: Defendant was, on cross-examination for the purpose of testing the recollection and knowledge of this witness, entitled to ask, and have him describe each of defendant's three yearlings and to give their sex, size, color and apparent age.

**4. Same—Opinion Evidence.**

On a trial for theft of one head of cattle, while it was proper for the prosecutor to testify, that when he drove the yearling home and put her in the pen, she smelled her mother, who was in the pen, it was not competent or admissible for him to state, that he knew by this fact that she recognized said cow as her mother.

APPEAL from the District Court of Falls.    Tried below before Hon. SAM R. SCOTT.

Appeal from a conviction for theft of one head of cattle; penalty, two years' imprisonment in the penitentiary.

The case and questions discussed are readily understood from the opinion, without the necessity of further statement.

*James Gameson, Rice & Bartlett,* for appellant.

*Mann Trice,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of the theft of one head of cattle, the property of J. H. Robertson, and given two years in the penitentiary; hence this appeal.    Appellant was charged by indictment, in one count, with the theft of one head of cattle, and, in the other count, with receiving the animal from West Berry, and concealing the same.    The evidence showed that the animal in question was found in the defendant's lot, about a year after it had disappeared from the premises of J. H. Robertson, and the alleged owner asserted property rights in the animal.    Robertson, in his testimony, states that when he accosted the defendant, and asked him what he was doing with his (Robertson's) animal, the defendant claimed the animal as his, and said that he had raised it.    Robertson asserted property rights in it, and told the defendant it was his, and that it was just like its mother; and the defendant said it was just like its mother.    Robertson then asked where its mother was, and the defendant said, "she died up in the gully."    Robertson said, "No; I have its mother at home, in the lot," and told the defendant that he was going to take the animal in controversy home with him; and the defendant finally said, when he saw Robertson was going to take the animal away, "Well, I see you are not going to let me have it, so you can take it along," and assisted Robertson to drive the animal to his house, for which Robertson paid him 25 cents.    In the conversation above referred to, at the defendant's pen, the defendant claimed to have received the animal, and that its mother died up in the gully, and that he had raised the animal from a calf. In this connection the defendant testified: "I told Robertson that the yearling was not his; that it belonged to me; that I had raised it from a motherless calf; and that its mother had died up in the gully."    The defendant's testimony is to the effect that he had some cattle of the same breed as the one in question; that he had nothing to do with his stock; that his son, West Berry, attended to them, and did all the

marking and branding; that he never marked or branded any of his ·cattle; and that West Berry also had stock of his own, and used defendant's branding iron in branding his cattle, as well as the defendant's. After this animal had been at defendant's for some time, he discovered the fact that it had been branded, and made inquiry in regard to this matter, and was informed that West Berry had branded the animal. Defendant got after him about it, and told him he ought not to have done so. But the defendant's wife and West Berry claimed that as they had raised the calf, and no one had ever claimed it, they thought they had a right to it; that he lived on the public road; that his cattle ran there, and everybody could see them; and that, when he put the animal in question to a bull, he had driven it right by Mr. Robertson's residence, in carrying it to said bull. Defendant testified that he never claimed the animal in question, or offered to sell it; that Jackson and others had offered to buy it, and he had told them that it did not belong to him, but that his wife and children claimed it. In this connection, the appellant prepared a special instruction, and asked the court to give it, in regard to the defendant's explanation of his possession of the property. This was refused, and a charge was given by the ·court that if the defendant had possession of the property, and refused and failed to give an account of his possession, then, before they could ·convict upon the circumstances of such possession alone, they must be satisfied that his possession was personal, recent, exclusive, and unexplained, and involved a distinct and conscious assertion of property by the defendant. If either of these constituents were wanting, the defendant was entitled to be acquitted. This, as we understand it, was a charge upon the weight of the testimony, and was, therefore erroneous. See, Wheeler v. State, 34 Tex. Crim. Rep., 350, and Hays v. State, 36 Tex. Crim. Rep., 533. This charge, even if it had been the law, submits the case, as it occurs to us, upon a false theory. The animal in question had been running with the defendant's cattle for some time; but there was no evidence of his actual possession, outside of the fact that it was running with his cattle, and at the time of its recovery was found in his pen. This was fully explained by the defendant, and, if true, it entitled him to an acquittal. If the animal, as alleged, took up with his cattle, ran with them, was branded by West Berry, without the knowledge or consent of the defendant, and the defendant exercised no ownership or control over it, he certainly would not be guilty of theft. The defendant asked a charge in this connection. While not as full as it should have been, it called the court's attention to this theory of the case. A direct and pertinent application of the law to the facts of this case with reference to the question of theft would have been simply to submit the facts relied on. If the jury believed that the defendant fraudulently took the animal, and claimed it, he would be guilty; but if he did not, and the animal was taken and branded by West Berry, without participation by the defendant, the defendant then would not be guilty of theft. Of course, if he afterwards received the property from

West Berry, with the knowledge that it was stolen, and with the intent to appropriate it to his own use, he might be guilty of receiving stolen property; but this issue was not submitted to the jury. A bill of exceptions reserved by the appellant alleges that, "after the defendant had proved by himself and wife that in the year 1893, while Johnny Jones, a witness for the State, lived near them on the Falls County poor farm, they had three cows and several yearlings, and that the yearling in question was one of these, and ran upon their premises immediately around said poor farm; and the defendant had shown it to Jones, and asked him if he knew who the owner was in the year 1893, the State was allowed to call, and did call, said Johnny Jones, who testified, in rebuttal, that the defendant had only two milch cows and three yearlings, and that the yearling in question was not one of these, or ran with his cattle and claimed by him at that time, and that he had never seen this yearling with the defendant's cattle, and the defendant or no one else had ever spoken to him about it; that he knew the animal well, and knew that it was Robertson's. At this juncture, the defendant, in order to test the recollection and knowledge of this witness concerning said yearling, asked him to describe each of the three yearlings that the defendant then had, and to give the sex, size, color and apparent age of said three yearlings that belonged to defendant, and ran around his premises." The State objected to this testimony, as being immaterial and irrelevant. The court sustained the objection, and excluded the testimony, and would not permit it to go to the jury. Under the facts stated in this bill, this testimony is clearly legitimate in cross-examination, as testing the main facts stated by the witness, to-wit: his knowledge of and familiarity with the cattle of the defendant. While the witness, Robertson, was on the stand, testifying in behalf of the State, he was permitted to state, over the defendant's objection, that, when he carried the heifer in question to his pen she smelled her mother, and by this fact he knew she recognized said cow as her mother. We believe the defendant's objection should have been sustained. This is not a matter of expert or opinion evidence. It was proper, however, for the witness to testify that the heifer smelled the mother, but not that she thereby recognized the cow as her mother. For the reasons indicated, this judgment is reversed, and the cause remanded.

*Reversed and Remanded.*