## AUSTIN TERM, 1899.

### JEFF FORD v. THE STATE.

No. 1973. Decided June 14, 1899.

Motion for Rehearing Decided December 2, 1899.

**1. Robbery—Recent Possession and Reasonable Explanation—Charge.**

On a trial for robbery, where possession of the property taken is only one of the circumstances relied on for a conviction, recent possession with reasonable explanation is not required to be charged upon as is required where such possession is alone relied upon.

**2. Same.**

On a trial for robbery, where defendant was found in recent possession of the property taken, and his defense was that he had purchased it, a charge of court authorizing the jury to acquit if they believed defendant had bought it or if they had a reasonable doubt concerning the matter, is a better and more appropriate charge than would be a charge upon recent possession and reasonable explanation.

**3. Bill of Exceptions to Evidence Excluded.**

Where written testimony on a previous trial is sought to be introduced, and some of it is admissible, and other portions not admissible, a bill of exceptions to the exclusion of the testimony, to be sufficient, should point out such portions of the testimony as were admissible. It is not the business of the court to select out for defendant the portions which were admissible; this he must do himself in his bill of exceptions.

**4. Robbery—Impeachment of Witness—Part of an Act or Declaration, etc., the Whole Admissible, When.**

On a trial for robbery, where the State, for the purpose of impeaching the defendant as a witness, read certain extracts and portions of the testimony given by a witness on the habeas corpus trial whose testimony defendant had sworn was substantially correct, whereupon defendant insisted upon reading the entire testimony of said witness under provision of article 791, Code of Criminal Procedure, giving a party the right where any portion of an act, declaration, etc., has been introduced against him to introduce the whole, etc.; Held, defendant had no right to the whole of the witness' testimony simply because extracts of the same had been used to impeach him; he was only entitled to such other portions as would qualify or defeat the alleged impeaching portions.

**5. Same—Charge of Court.**

On a trial for robbery, where the evidence showed that defendant was found thereafter in recent possession of some of the property taken, a charge of court instructing the jury to acquit if defendant obtained the property by gift or purchase, or they had a reasonable doubt as to whether he procured it by means of assault, violence, and putting the assaulted party in fear, etc., is not injurious to defendant, and the court on appeal, under provisions of article 723, Code of

41st Crim. Rep.—1

Criminal Procedure, will not reverse notwithstanding there was no evidence adduced that defendant acquired the property or any portion of it by gift.

**6. Same—Assigned Errors—Practice on Appeal.**

Assigned errors as to the court's charge will not be considered on appeal where the same is not presented by bill of exceptions nor brought forward in the motion for new trial. Code Crim. Proc., art. 723.

**7. New Trial—Newly Discovered Evidence.**

A new trial for newly discovered evidence will not be granted where no diligence is shown nor where the desired testimony would serve simply to impeach a witness, nor where said testimony would not probably be true reviewed in the light of the evidence adduced at the trial. (But see infra, paragraph 8.)

**8. New Trial—Newly Discovered Evidence.**

Where fairness and justice require it, a motion for new trial based upon newly discovered evidence will be granted, although the evidence may not in strictness be regarded as newly discovered. Following Roy v. State, 24 Texas Criminal Appeals, 377.

APPEAL from the District Court of Fannin. Tried below before Hon. E. D. McCLELLAN.

Appeal from a conviction for robbery; penalty, five years imprisonment in the penitentiary.

The indictment charged appellant with the robbery of Joseph Seagall, by assault and violence and putting him in fear of life and bodily injury, on the 17th day of November, 1898.

Joseph Seagall was an Assyrian by birth, about 18 years old; was a peddler, and had been in Texas only some seventeen months. The defendant, Jeff Ford, and Cliff Hays, Wilbur Johnson, and Walter Thompson were a hunting party on their way in a wagon and a buggy to the Indian Territory for a hunt. Seagall was on foot with his peddler goods in a box and valise which he was carrying. When the parties met on the road, Cliff Hays pointed his pistol at the peddler and made him stop. All four of the parties got out of their vehicles, went to the peddler, and Cliff Hays made him open up his valise. The peddler got scared and started to run, leaving his valise and box, when Hays pointed his pistol at him and made him come back. Hays then broke open his box, and each of the four parties took some of the goods, consisting of white and red handkerchiefs, a baby bib, small looking-glasses, etc. The peddler then fixed up his broken box and started off, when, as he testified, Hays again pointed his pistol at him and told him to come back; and when he got back to him, he, Hays, caught him in the bosom with one hand and ran his other hand into the peddler's pants pocket and took therefrom his pocketbook containing one five-dollar bill, eleven silver dollars, and one dollar in small change. They then went off carrying with them the articles they had taken from the valise and the pocketbook containing the money. The robbery was witnessed by a Mrs. Brown, who lived in a small cabin some forty or fifty yards from where it occurred, and she so testified on the trial. The peddler notified the officers, and from his descrip-

tion they were able to identify them. On Saturday night after the robbery the parties returned from their hunt to Bonham, where they were arrested at a saloon about 11 o'clock and placed in jail, where the peddler, Seagall, identified each and all of them as the parties who had robbed him. They were searched by the officers, who took from each of them new red and white handkerchiefs, and from Cliff Hays, a baby's bib and small sized looking glass. They each claimed that they had purchased these articles from the peddler and paid him for them. Defendant Jeff Ford was proved to be a man in good circumstances and of good reputation.

After their arrest the parties sued out a writ of habeas corpus for bail, and upon that hearing Walter Thompson, one of the parties, had testified. Defendant Jeff Ford was requested by his own counsel to pay strict attention to what Thompson testified; and when he was afterwards sworn as a witness himself, on the said habeas corpus, he testified that he had heard the testimony of his codefendant Walter Thompson, and that the same was substantially correct. On this robbery trial defendant was a witness, and for the purpose of impeaching him the State introduced certain portions of Walter Thompson's testimony on the habeas corpus trial. Defendant then proposed to introduce the whole of said Thompson's testimony, which the court refused to permit him to do, but proposed to allow him to introduce any other portions of the same as might refer to, explain, or throw light upon the portions which had been read by the State. Defendant declined to do so and claimed his right to read the whole of said testimony, and saved his bill of exceptions to the refusal of the court to permit him to do so.

Defendant's objections urged to the charge of the court are fully stated in the opinion and need no further illustration.

One of defendant's grounds stated in his motion for new trial was the newly discovered evidence of Bill Long and Mrs. Bill Long, J. F. Reed and Tandy Reed. These witnesses appeared and testified before the court on the hearing of said motion, the substance of their testimony being that shortly after the robbery Joseph Seagall, the peddler, came to the house of Bill Long, where he ate dinner. He told these witnesses that he had been robbed, and Bill Long asked him if they had robbed him of any money. And he said "No, they got none of my money; they got my goods." He said he thought the men got about ten dollars' worth of goods. Defendant also proved on the motion for new trial, by Will Cope and J. M. Harris, that they were thoroughly acquainted with the cabin and premises occupied by Mrs. Brown at the time of the robbery. That in fact Harris now (at the time he testified) was living in the cabin. That in the condition of the premises at the time of the robbery it was impossible for Mrs. Brown to have seen the robbery.

Ben Dulaney and Joe Moss testified that they had visited the cabin of Mrs. Brown since the alleged robbery, and from experiments which

they together made of the locus in quo, a party in the cabin could not have seen the place of the robbery.

*John C. Meade, James H. Lyday*, and *Stillwell H. Russell*, for appellant.

*Rob't A. John*, Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was convicted of robbery, and his punishment assessed at confinement in the penitentiary for a term of five years.

Appellant's first bill of exceptions complains of the failure of the court to charge the jury as requested by him, to wit: "If defendant, when first accused of robbing the prosecuting witness, Joseph Seagall, and when goods were found in his possession, and first arrested and charged with the crime for which he is on trial, gave a reasonable account of how he came in possession of the goods found in his possession and claimed by said Joseph Seagall, it then devolves on the State to show the falsity of the explanation." On this phase of the case the court charged the jury as follows: "If defendant obtained from Joseph Seagall possession of any of the property described in the indictment, or if other persons were in company with the defendant and obtained possession of any of such property from Joseph Seagall, yet if you believe that such possession of said property was obtained by purchase or by gift, or by both purchase and gift, from said Joseph Seagall, or if you have a reasonable doubt as to whether such possession of the property was obtained by purchase or gift, or by means of assault, violence, or putting said Seagall in fear of his life or bodily injury, then you must acquit the defendant." We do not think it was necessary in this case for the court to charge as requested by appellant. In cases of robbery, where possession is only one of the circumstances relied upon for the conviction, recent "possession," as the term is ordinarily understood, does not have to be charged upon, as it is where the possession alone is relied upon for conviction. In Hays v. State, 36 Texas Criminal Reports, 533, we held that the charge of the court authorizing the jury to acquit, if they believed defendant had bought the pistol, or if they had a reasonable doubt concerning the matter, was an apt presentation of the defense, and better than if the court had charged upon recent possession and reasonable explanation. And we think the same statement would apply to the charge given by the court in this case; that it was a better charge, and more appropriate to the facts of this case, than a charge on recent possession, such as was asked by appellant. We do not think the court erred in failing to give said charge. Berry v. State, 37 Texas Crim. Rep., 44; Mathews v. State, 32 Texas Crim. Rep., 355; Teague v. State (Texas Crim. App.), 31 S. W. Rep., 401; Ledbetter v. State, 35 Texas Crim. Rep., 195; Gilmore v. State (Texas Crim. App.), 33 S. W. Rep., 120.

Appellant's second bill complains of the action of the court in the following particular: It appears that there had been a habeas corpus trial of appellant and other parties, including Walter Thompson. Walter Thompson testified on the habeas corpus trial at length, detailing the facts of the supposed robbery. It is not necessary to state in full all of his testimony, which is attached as an exhibit to this bill, but we think we can make it sufficiently intelligible by stating the substance of appellant's contention. The State had offered in evidence four extracts from the written testimony of Walter Thompson on habeas corpus trial, as is fully shown by bill of exceptions number 2. Thereupon defendant offered the entire written testimony of the said Walter Thompson for the purpose of enabling the jury to determine whether or not the same was substantially the same as is defendant's testimony on this trial. But the State objected to the introduction of all of said written testimony, because the same was irrelevant, illegal, self-serving, immaterial, and was an attempt by defendant to get before the jury the testimony of the said Walter Thompson, defendant's codefendant, now charged in this court by bill of indictment with the same offense with which this defendant is now being tried, which objections were by the court sustained. On the habeas corpus trial above mentioned, after the said Walter Thompson had given his testimony, appellant took the stand and stated that the testimony of Walter Thompson was substantially correct. And appellant's bill of exception number 3 complains of the following proceeding: Appellant was fully sworn, and testified as a witness in his own behalf, and in his testimony denied that he or any of his three codefendants robbed the injured party, Joseph Seagall, at the time and place as detailed by the said Seagall and claimed in his testimony; that he and three codefendants purchased from said Joseph Seagall all the articles found on them when they were arrested. He testified, on cross-examination, among other things, as follows: "It was just after Hays called the peddler back that he (Hays) said, 'What if I was constable of precinct No. 1,' etc., as stated in my examination in chief. And Hays went to the buggy, and picked the pistol up that was in the scabbard, and showed it to the peddler, and then put it back in the buggy. No; Hays never, at any time, had the pistol in his pants. It is not a fact that, when Hays told the peddler to come and get his damned box, he (Hays) held the box out in his hand, and when the peddler did not come back he (Hays) dropped the box and broke it. No; it is not a fact that the Dutchman, or peddler, gave us all a present. No; it is not a fact that the Dutchman, or peddler, said he would give us all a present, and he did not then set down his grip, and give us a white handkerchief apiece. He gave us nothing, but we paid him for everything we got from him. Yes; I was present in the courtroom, and heard my codefendant Walter Thompson testify on the habeas corpus proceedings instituted by all four of us before Judge McClellan for bail. I also heard the clerk of this court read said testimony

over to the said Walter Thompson, and I was requested by my attorneys to and did pay close attention to the reading of said Walter Thompson's testimony. The clerk also swore me on said habeas corpus trial. I then testified orally that I had heard my codefendant Walter Thompson testify in said proceeding. I also testified that I had heard the clerk read said testimony over to said Walter Thompson, and I also swore that the same was substantially correct. I don't remember Thompson swearing on said habeas corpus trial that Hays had the pistol in his pants on his left side when he called the Dutchman back. I don't remember of Thompson swearing on that trial that Hays held the Dutchman's, or peddler's, box up, and told the Dutchman to come back and get his damned box, and when the Dutchman did not come back that Hays dropped the box on the ground and broke it. The box was broken after the peddler came back to where we were. Hays just pitched the box towards the peddler when it was broken. I don't think Thompson swore on said trial that the Dutchman, or peddler, said he would give us a present, and set his grip down, and gave us a white handkerchief apiece. I don't think he swore on said trial that there was nothing taken from the Dutchman but what was paid for, except what he gave us. The peddler did not give us anything. We paid for all we got." The State then offered to read in evidence to the jury, for the purpose of impeaching the defendant, the following extracts from the written testimony of Walter Thompson on the habeas corpus trial, to wit: "First. 'When Hays called the Dutchman back, Hays had the pistol in his pants on his left side.' Second. 'When he told the Dutchman to come back and get his damned box, Hays held the box out in his hand, and the Dutchman did not come back, and Hays dropped the box and broke it.' Third. 'The Dutchman said he would give us a present, and set his grip down, and gave us a white handkerchief apiece.' Fourth. 'There was not anything taken from the Dutchman but what was paid for, except what he gave us,' "—to the introduction of which the defendant objected, "because the jury could not judge from these partial extracts from said testimony whether defendant so understood it when read, nor whether from these partial extracts the statement of Walter Thompson, as defendant understood it, and his statement on the stand in this case, were substantially the same."

We will consider these two bills of exception together. The court adds the following explanation to bill of exception number 2: "The court told defendant's counsel that, if there was any other portion of said written testimony which in any way referred to, explained, or threw any light upon any of the matters and transactions contained in those portions of said testimony offered and read in evidence to the jury by the State, the defendant could read to the jury as evidence in this case all such portions. But defendant did not call the court's attention to any such portions, and did not claim that any other portion of said written testimony explained or related in any way to such mat-

ters and transactions, but claimed that the same was admissible under the general rule that, where a part of a declaration or conversation is introduced, the whole of it upon the same subject is admissible, if offered by the other party." We think a sufficient answer to the contention of appellant is found in the bill itself, in that the same does not point to us any portion of the evidence that is admissible, but claims that the court erred in failing to admit all of it. Certainly appellant can not contend that the whole of the witness Walter Thompson's testimony is admissible, simply because extracts of same were introduced to impeach defendant. If there are any portions of it that qualify said impeachment, or refute the contention of the State that appellant had made a contrary statement on the habeas corpus trial, that portion would be admissible. But the court in his explanation says that appellant did not point out any portion of said testimony that was admissible. Where some of the evidence objected to is admissible, and some of it not, it is necessary that the bill of exceptions point out that portion of the evidence which is admissible. Where a party offers all of a record, and says it is admissible, and a part of it might be admissible, and part evidently is not, we will not select out for appellant that part which is admissible, but he must do so himself in his bill of exceptions. Rucker v. State (Texas Crim. App.), 47 S. W. Rep., 1014. We do not think there was any error in the action of the court as indicated in either of said bills of exception. See Code Crim. Proc., art. 791; Kunde v. State, 22 Texas Crim. App., 96; Green v. State, 17 Texas Crim. App., 395. And see, also, on the question as to how a bill of exceptions shall be worded, Coyle v. State, 31 Texas Crim. Rep., 604; Woodson v. State, 24 Texas Crim. App., 153; Buchanan v. State, 24 Texas Crim. App., 195; Rahm v. State, 30 Texas Crim. App., 310; Schoenfeldt v. State, 30 Texas Crim. App., 695.

Appellant's fourth bill of exceptions complains of the action of the court in the giving of the following charge: "If the defendant obtained from Joseph Seagall possession of any of the property described in the indictment, or if any other persons were in company with defendant and obtained possession of any of such property from Joseph Seagall, yet if you believe that such possession of said property was obtained by purchase or by gift, or by both purchase and gift, from said Joseph Seagall, or if you have a reasonable doubt as to whether said possession of the property was obtained by purchase or gift, or by means of assault, violence, or putting said Seagall in fear of his life or bodily injury, then you must acquit the defendant." Appellant complains of this charge on the ground that there is no evidence whatever that defendant or his codefendants acquired said property, or any portion thereof, by gift, to authorize said charge. Conceding the contention of appellant in this respect to be correct, we do not think it was such error as was calculated to injure the rights of appellant; and under article 723, Code of Criminal Procedure, enacted by the Twenty-fifth Legislature (Laws 1897, page 17), we do not see fit to reverse

the judgment on this account. Stewart v. State (Texas Crim. App.), 50 S. W. Rep., 459; Wright v. State, 37 Texas Crim. Rep., 627; Brite v. State (Texas Crim. App.), 43 S. W. Rep., 342.

We note that the assignment of errors complains of the court's charge in several particulars, but these objections are not presented by bill of exceptions nor in motion for new trial. This being the case, we can not review the same, even if they are erroneous. Code Crim. Proc., art. 723; Stewart v. State (Texas Crim. App.), 50 S. W. Rep., 459.

Appellant insists that he should be granted a new trial on the ground of newly discovered evidence. We do not think there was any error in refusing to grant a new trial on this account, because the testimony desired would have simply served to impeach the prosecuting witness; and, furthermore, there is no diligence shown to secure their testimony. Nor do we think the same was probably true in the light of the record before us. The trial court has passed upon the application in this regard, and we see no reason to doubt the correctness of its discretion. The jury have passed upon the facts, and have found appellant guilty, and there is no reason shown why the judgment should be disturbed, and the same is therefore in all things affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

BROOKS, JUDGE.—This case was affirmed at the last Austin term, 1899, and now comes before us on motion for rehearing. In the original opinion, in passing upon the motion for new trial based upon newly discovered evidence, we said: "We do not think there was any error in refusing to grant a new trial on this account, because the testimony desired would have simply served to impeach the prosecuting witness; and furthermore, there is no diligence shown to secure the testimony. Nor do we think the same was probably true, in the light of the record before us." We have again carefully reviewed this record. The affidavits which contain the newly discovered evidence cover about ten pages of the transcript. While a great deal of the same, as indicated in the original opinion, was impeaching testimony, yet, in the light of the record before us, we think some of said testimony was not of this character, and was calculated to bring about a different result, if the same had been introduced in behalf of appellant. In passing upon a similar question in Roy v. State, 24 Texas Criminal Appeals, 377, Judge Wilson, delivering the opinion of the court, used this language, to wit: "We are also of opinion that the court erred in not granting defendant a new trial. While the additional evidence disclosed by the affidavits accompanying said motion may not, in strictness, be regarded as newly discovered, still we think fairness and justice require that a new trial should have been awarded." We therefore conclude that the court erred in not granting a new trial, as

contended by appellant, on the ground of newly discovered evidence. The motion for rehearing is accordingly granted and the judgment is reversed and the cause remanded.

*Motion granted. Reversed and remanded.*