## WILL LINDSEY v. THE STATE.

### No. 3588.    Decided November 21, 1906.

**Manslaughter—Photographs—Position of Parties—Newly Discovered Evidence.**

Where upon trial for murder it became a material question whether one of defendant's witnesses could have seen the defendant and deceased, from where she stood at the time of the killing, and her testimony was attacked by one of the State's witnesses who testified that said witness could not have seen the parties, and State's witness had stated before going on the stand that he knew nothing; and that defendant in his motion for a new trial showed by photographs taken under similar conditions as at the time of the homicide that said witness could have seen the parties, and such photographs were fortified by the testimony of witnesses upon the ground to the same effect. Held, that this was newly discovered evidence, or at any rate defendant should have been granted a new trial.

Appeal from the District Court of Rusk. Tried below before the Hon. Richard B. Levy.

Appeal from a conviction of manslaughter; penalty, three years imprisonment in the State penitentiary.

The opinion states the case.

*Buford & Buford,* for appellant.— Riojas v. State, 36 Texas Crim. Rep., 187; Bullock v. State, 12 Texas Crim. App., 49; Lindley v. State, 11 Texas Crim. App., 287; Trimble v. State, 16 Texas Crim. App., 115; Clark v. State, 29 Texas Crim. App., 357.

*J. E. Yantis,* Assistant Attorney-General, and *W. W. Moore, P. O. Beard,* District Attorney, for the State.—On question of newly discovered evidence: Gay v. State, 69 S. W. Rep., 511; Rogers v. State, 69 S. W. Rep., 507; Brice v. State, 61 S. W. Rep., 121.

BROOKS, JUDGE.—This conviction is for manslaughter, the punishment of appellant being fixed at three years confinement in the penitentiary.

Appellant bought a little farm, adjoining deceased's farm, and had been living there some two years at the time of the homicide. The year of the homicide he rented a piece of land from deceased, which was back of deceased's orchard, and enclosed with other lands of deceased which he did not rent. Appellant planted this land in cotton. When the cotton began to open, deceased, without cause so far as this record discloses, began to talk about appellant; and on one occasion cursed him, telling him he could not gather the crop on his (deceased's) land that appellant had made there. Appellant believed this was a plan of deceased to run him away from his crop, so that deceased could get the entire crop. Deceased had inhibited appellant entering the cotton field in question, some four or five days before the killing. However, appellant went into the field to see if the cotton was opening to pick, and carried his gun as a protection, as he claims, in the event deceased assaulted him. He walked over the ground inspecting the cotton, with his gun over his shoulder. Deceased came out of his house, and rushed towards him. Appellant retreated in a westerly direction, deceased following, some two hundred yards from deceased's house, something like one hundred and fifty yards from Mrs. Thornton's house—a witness for appellant. This witness was a sister of deceased's wife. The record shows that the justice of the peace went down to deceased's (Broom) house, where his family were, to hold an inquest; and at that time none of deceased's family claimed to have seen the killing. Mrs. Thornton stated that night, that she saw the killing, and that at the time appellant got over the fence, deceased rushed at him with a stick upraised; that defendant backed away from him, and in backing he seemed to stumble or lose his balance; that deceased was close to him, coming upon him with an uplifted stick. That defendant fired his gun, not from his shoulder, but with the gun at his side in his left hand. Appellant testified substantially to the same facts.

Appellant finding the sheriff's name among the papers as a witness for the State, asked the sheriff what his testimony would be, and what he knew about the case: to which he replied "nothing." During the progress of the trial, witness Mrs. Thornton testified as above stated. The sheriff was introduced by the State and testified that soon after the killing he was on the ground, and that Mrs. Thornton showed him where she stood at the time of the killing, and then placed another man (John Broom we presume, deceased's son) in the

place where deceased stood at the time he was shot. The sheriff testified that from this position Mrs. Thornton could not have seen defendant and deceased at the time of the killing. He also testified that Mrs. Thornton told him that she did not see deceased have a stick in his hand at the time he was shot. The State produced another witness, Leitha Broom (daughter of deceased), who testified that she was standing under some mulberry trees in the yard, at her father's house at the time he was killed; that she saw the parties; that her father had no stick in his hand, but had his hands uplifted at the time he was shot.

After the verdict was rendered, appellant's counsel asked the court to appoint a commission of men not related to the parties, whose testimony could be relied upon, to go to the place of the difficulty, and by placing men in the position that the parties occupied, to definitely settle the physical facts. This the court properly refused to do, as he had no power to do so. Then appellant had a photographer to go to the place, at the same time of the year, foliage in the same condition as it was at the time of the homicide, and at the same time of the day, to take views of the premises. Mrs. Thornton and the Brooms were present. One view shows the position Mrs. Thornton claimed the parties were in at the time of the shooting, and the other position placed the parties in the position that Leitha Broom claimed she was in at the time of the shooting; and produced said photographs upon the presentation of the motion for new trial. The photographs show that the parties could have been seen by Mrs. Thornton, and could not have been seen by Leitha Broom. These photographs are fortified by the testimony of witnesses upon the ground to the same effect. The question arises, is this newly discovered evidence? We think so. The sheriff had misled appellant as to his testimony and had misled appellant to that extent in the trial of the case. No suggestion had been made, prior to the trial that Mrs. Thornton's testimony was not true, or that the physical facts precluded her seeing the homicide. Furthermore, the Brooms stated at the inquest that they knew nothing about the killing; did not see it. Whether or not it comes within the grounds of newly discovered evidence, we think that justice demands a new trial should be granted in this case. Trimble v. State, 16 Texas Crim. App., 119; Bullock v. State, 12 Texas Crim. App., 49; Ford v. State, 53 S. W. Rep., 869.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*