## MILTON DOBBS V. THE STATE.

### No. 3820.   Decided March 6, 1907.

**1.—Murder in Second Degree—Evidence—Conspiracy.**

See opinion for facts with reference to the introduction of testimony showing that defendant bought some cartridges similar to the one with which the deceased was killed, which though unsatisfactory may have been warranted to be considered along with other facts in the case.

**2.—Same—Charge of Court—Weight of Evidence—Singling out Facts.**

Where upon trial for murder there was evidence that defendant had bought some cartridges shortly before the homicide, and the State undertook to show that it was with one of these cartridges that the deceased was killed, a charge that if the jury believed from the evidence that defendant bought some loaded gun shells for the purpose of shooting and killing deceased, etc., was objectionable as indicating to the jury that the court believed these cartridges were purchased for the purpose of killing deceased, and was directly on the weight of the evidence; besides it was error to single out these facts in the charge.

**3.—Same—Charge of Court—Conspiracy—Weight of Evidence.**

Upon trial for murder where the State undertook to prove a conspiracy, it was error to charge the jury that they should consider the acts, etc., against the accused, instead of instructing them that they might consider such evidence.

**4.—Same—Charge of Court—Self-Defense—Retreat.**

Where upon trial for murder there was evidence that defendant killed deceased in defense of his father, the doctrine of retreat should have been applied to the latter and not to defendant, and it was error to apply this doctrine to defendant in the court's charge on self-defense.

Vol. 51 Crim.—8.

Appeal from the District Court of Camp. Tried below before the Hon. P. A. Turner.

Appeal from a conviction of murder in the second degree; penalty, twenty years imprisonment in the penitentiary.

The opinion states the case.

*Sam D. Snodgrass, Reynolds & Reynolds,* for appellant.—On question of conspiracy: Chapman v. State, 76 S. W. Rep., 478; Wallace v. State, 81 S. W. Rep., 966; Graham v. State, 61 S. W. Rep., 714.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted of murder in the second degree, and given twenty years in the penitentiary.

The theory of the State was a conspiracy existed between M. B. Dobbs and Milton Dobbs and A. B. Dobbs, or between M. B. Dobbs and appellant, M. B. Dobbs being the father of appellant and A. B. Dobbs grandfather. There had been some trouble between the Dobbs family on one side and Mitcham on the other, Mitcham being a brother-in-law of M. B. Dobbs and son-in-law of A. B. Dobbs. This trouble arose out of supposed ill-treatment of A. B. Dobbs, the father of M. B. Dobbs, and Mrs Mitcham, wife of deceased, on the part of the deceased Mitcham and his wife. The State undertook to show by circumstances that M. B. Dobbs and appellant sided with A. B. Dobbs, father and grandfather in his troubles with Mitcham and wife, and by reason of these facts had determined to kill deceased. M. B. Dobbs, and appellant, his son, a boy 20 years of age, living with his father, lived about a quarter of a mile from the residence of deceased. There was a law suit pending between A. B. Dobbs and the deceased, growing out of a breach of contract between them. We deem it unnecessary to go into a detailed statement of all those matters. On the day of the homicide M. B. Dobbs, and four of his children, three girls and appellant, went to the town of Pittsburg, a few miles away from his residence, returning late in the evening. About four o'clock and before the return of M. B. Dobbs and his children home, the deceased Mitcham went to the town of Leesburg. Upon return of Dobbs and his children home he requested his wife to prepare supper in order that he and appellant might go to Cypress creek fishing that night. It seems from the testimony that Dobbs and his son were in the habit of going on Saturday evenings to this creek on fishing excursions, spending the night, carrying their guns with them. While in the town of Pittsburg in the morning appellant was in a hardware establishment and bought several articles, among other things, seven cartridges loaded with buck-shot. The various articles cost him the sum of 65 cents. About sunset appellant and his father started to Cypress creek for the purpose of fishing, and when a short distance from their residence they met deceased returning from Leesburg. Loud talking was

heard and one shot fired, which is shown to have been fired by appellant, resulting in the death of Mitcham. The theory of the State was that the meeting was intentional; that of the defendant it was accidental. The State introduced the witness Duke, over the objection of appellant, and proved the fact that M. B. Dobbs, in the absence of appellant, bought the seven cartridges above mentioned. Nothing was said by Dobbs at the time as to his purpose in buying them. The State undertook to show that it was with one of these shells that the deceased was killed. The evidence on this point, however, is not at all satisfactory. The physicians who attended the deceased cut into his body, but failed to find any shot. Appellant, when arrested the next day, was found in possession of three shells such as described by the witness Duke. Appellant objected to the testimony of Duke because he was in nowise connected with the buying of the shells, and further that the State failed to show that there was a conspiracy pending between appellant and his father to kill deceased. While the evidence is not satisfactory, still the admission of this testimony may have been warranted to be considered along with the other facts in the case. Different acts and words of Dobbs were introduced in evidence, which we suppose was upon the same theory as that which actuated the court in permitting the introduction of Duke's testimony in regard to the shells.

The court charged the jury in reference to these shells, as follows: "If you believe from the evidence that M. B. Dobbs bought from Jim Duke some gun shells or cartridges loaded with powder and buckshot for the purpose of shooting and killing J. T. Mitcham, and if you further believe from the evidence that M. B. Dobbs and the defendant conspired together and agreed between themselves to take the life of J. T. Mitcham, then I charge you that in considering your verdict in this case you will consider the evidence of Jim Duke, otherwise you will wholly disregard it and give it no consideration whatever." Various objections were urged to this charge. We believe this was a charge directly on the weight of the evidence. It indicated to the jury the court's belief or opinion that Dobbs had bought the cartridges for the purpose of shooting and killing Mitcham. No witness testified in regard to these shells except Duke, and he nowhere intimated in his testimony that defendant bought them for the purpose of killing Mitcham. In fact, his testimony is expressly to the effect that Dobbs said nothing in regard to the shells further than to purchase them. There was not a word said on the part of Dobbs as to why he bought the shells. He simply bought them, paid for them and went away. This fact was singled out of all the facts by the court, and this charge given with reference to this one particular thing, and in our judgment, in such a manner as to indicate to the jury that the court believed they were purchased for the purpose of killing or shooting the deceased. It has been so long the rule in Texas that the court shall not charge upon the weight of evidence, that it would seem like it is the work of

supererogation to discuss it.   The statute, article 715, Code Criminal Procedure, expressly prohibits it, and there are a great number of authorities in this State construing the statute and holding that the court must not intimate to the jury his view or conclusion as to the weight of the facts.   The judge is prohibited from conveying to the jury by any word in the charge or in any other manner, what his impressions are as to any particular part of the testimony.   See Butler v. State, 3 Texas Crim. App., 48; Brown v. State, 3 Texas Crim. App., 294; Fisher v. State, 4 Texas Crim. App., 181; Stuckey v. State, 7 Texas Crim. App., 174; Pharr v. State, 7 Texas Crim. App., 472; Babb v. State, 8 Texas Crim. App., 173; Harrison v. State, 8 Texas Crim. App., 183; Hodde v. State, 8 Texas Crim. App., 382; Renfro v. State, 9 Texas Crim. App., 229; Harrison v. State, 9 Texas Crim. App., 407; Stephens v. State, 10 Texas Crim. App., 120; McWhorter v. State, 11 Texas Crim. App., 584; Maddox v. State, 12 Texas Crim. App., 429; Walker v. State, 13 Texas Crim. App., 618; Wyers v. State, 22 Texas Crim. App., 258; Spears v. State, 24 Texas Crim. App., 537; Parrish v. State, 45 Texas, 52; Walters v. State, 37 Texas Crim. Rep., 388; Ayers v. State, 37 Texas Crim. Rep., 1; Berry v. State, 37 Texas Crim. Rep., 44; Forbes v. State, 35 Texas Crim. Rep., 24; Jaimes v. State, 32 Texas Crim. Rep., 473; Gonzales v. State, 32 Texas Crim. Rep., 611, and for a great many other authorities see White's Ann. Code of Crim. Proc.. sec. 809.   As we view this charge, it was a clear intimation of the court to the jury of the belief on his part that appellant had bought the cartridges for the purpose of shooting or killing the deceased, and this is made the clearer and more pungent by reason of the fact that this isolated fact is selected by the court upon which to base such a charge.   There is another rule in regard to this matter, which occurs to us has been violated; that is, that the court should not select out an isolated fact out of a given number of facts upon which to predicate a charge.   This of itself would seem to constitute a charge on the weight of evidence.

Complaint is made of the following charge: "I further charge you that if you believe from the evidence that M. B. Dobbs and defendant conspired or agreed to take the life of J. T. Mitcham, then I charge you to consider, in arriving at your verdict, in this case, the conduct, acts, words and conversations, if any, of M. B. Dobbs in the absence of the defendant that you may find were offered in evidence in this case; otherwise, you will wholly disregard them and give them no consideration whatever; that is, such of them as you may find, if any, that took place in the absence of the defendant."   Just previous to giving this charge, the court also instructed the jury, "In considering whether or not there was a conspiracy or agreement between M. B. Dobbs and the defendant to take the life of J. T. Mitcham, you may consider all the evidence in this case, except the conduct, acts, words. and conversation of M. B. Dobbs, which you will not consider."   To the first charge quoted appellant urged his objection.   We believe this

charge is not correct. Where a conspiracy has been proved, then the acts, conduct, words, etc., of one of the co-conspirators *may* be used in evidence against the other or others, made or done in his absence, provided they are in furtherance of the common design. The acts, words or conduct of a co-conspirator are not admissible against another co-conspirator or alleged co-conspirator unless they are in furtherance of the common design, but in no event ought the court to tell the jury they shall consider the acts as against the accused; but should charge that they may consider them. We believe, as contended by appellant, this charge is subject to the objection, that it has a tendency to place the reasonable doubt adversely to appellant. If there is a doubt of the conspiracy under the facts, the jury should be told affirmatively, that before the acts and declarations of a co-conspirator can be used as evidence, it must be shown beyond a reasonable doubt that a conspiracy existed between the parties, and if there is a reasonable doubt as to the existence of a conspiracy, the declarations and acts and conduct of the co-conspirator must be excluded from consideration by the jury. See Graham v. State, 61 S. W. Rep., 714; Wallace v. State, 81 S. W. Rep., 966, and Chapman v. State, 76 S. W. Rep., 478. Authorities are hardly necessary to support this proposition. Where the State undertakes to prove by circumstances a conspiracy, this must be done to the exclusion of the reasonable doubt, and if there is a reasonable doubt on this proposition, then the jury should be instructed before they can consider the acts of a co-conspirator, that conspiracy must be shown beyond a reasonable doubt. It is well enough to repeat again that the presumption of innocence and reasonable doubt are the cardinal principles upon which a criminal prosecution is conducted, and in charging a jury in regard to these matters these two fundamental propositions should be kept strictly in mind.

Objection is urged also to the following charge: "A reasonable apprehension of death or great bodily harm will excuse any party in using all necessary force to protect the life or person of such other person, and it is not necessary that there should be actual danger to such other person, provided he, the party acting, acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time and in such case the party acting under such real or apparent danger is in no event bound to retreat to avoid the necessity of killing the assailant of such other person." The law of retreat is inherent in the doctrine of self-defense and this by the statute. There is no contention on the part of the defense that appellant was in danger of his life and, therefore, the law of retreat did not apply to him. The law of self-defense did not apply to him personally. As we understand the facts he killed in defense of his father who was lying on the ground where he had fallen in the scuffle over a gun with deceased; that the gun had become unbreached; that the barrel was in the hands of deceased and the stock in the hands of M. B. Dobbs, who had fallen, and that deceased was in the act of striking M. B.

Dobbs .when he asked appellant not to permit deceased to kill him. The doctrine of retreat should have been applied to M. B. Dobbs and not to appellant. At least, if it was applied to appellant, it should have been applied in regard to M. B. Dobbs; he is the party who was in danger at the hands of deceased, and not the defendant. If there is a case applying the law of retreat to a party killing in defense of a third party, under such circumstances, as developed in this case, it has escaped our attention. Appellant was in no danger himself—but his father was. M. B. Dobbs, under the circumstances, was not bound to retreat. Appellant was in no danger himself and he acted in defense of his father and at the command of his father. This was the case made by appellant, and the law should be applied to the facts as made.

The bill of exceptions reserved to the overruling of the application to change the venue was filed after term time and, therefore, cannot be considered. A discussion of it, therefore, is not indulged.

The questions arising on the impaneling of the jury will not be reviewed. They may not occur upon another trial, and if they should, would not occur perhaps as in this case.

The other questions as we view them, do not present reversible errors and, therefore, are not discussed.

For the errors indicated, the judgment is reversed and the cause remanded.

*Reversed and remanded.*