John Madison HUGHES, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–82–0053–CR.

Court of Appeals of Texas, Tyler.

April 18, 1985.

Discretionary Review Granted Feb. 26, 1986.

James Morris, Orange, for appellant.

Herbert Hancock, Nacogdoches, for appellee.

---

SUMMERS, Chief Justice.

John Hughes was convicted of voluntary manslaughter, and the jury assessed punishment at confinement for twenty years and a $10,000 fine. Because we find error in that part of the court's charge relating to the defense of another, we reverse the judgment and remand the cause for a new trial.

Sometime in January 1982, prior to the day of the killing, Hughes and others were visiting at the home of Mary Hodge. They had been there about fifteen minutes when Rodney Johnson (the deceased) arrived. Hughes approached Johnson to greet him. Johnson hit Hughes with his fist, and Hughes pushed Johnson to the ground. Hughes then pulled a .44 magnum from his pants pocket. It appears that Hughes did not point the gun at Johnson but merely displayed it to fend off Johnson's attacks. Hodge testified that Hughes and Johnson had been drinking beer and other liquor. Apparently, this altercation was over a young woman named Joan Goodwin, who was present at the time of the confrontation. She testified that Johnson had previously threatened to kill her and Hughes unless they stopped seeing each another. Hodge testified that she heard both Johnson and Hughes threaten to kill each other before she asked everyone to leave.

On January 28, 1982, the day of the killing, Hodge, Goodwin and Hughes were driving home from Nacogdoches, Texas. Hodge was driving; Goodwin and Hughes were drinking. Hodge testified that Goodwin and Hughes had consumed a pint of whiskey in twenty minutes and that Hughes was waiving his gun in the car and pointing the barrel in his mouth. On their way home Goodwin saw Johnson driving his green and white truck in the opposite direction. Johnson turned his truck around and followed them. Hodge pulled her car to the shoulder of the highway to allow Goodwin to talk to Johnson.[1] Johnson parked behind the car and stayed in the truck. Goodwin and Hughes climbed out of the car and walked back to the truck.

Hodge, Roy Sanford and Gary Williams gave eyewitness accounts of the events that followed. Hodge watched from the car while the other two observed from a pasture about 45 to 50 yards away. All three eyewitnesses testified essentially to the same facts. When Goodwin and Hughes reached the truck, Johnson began yelling. None of the eyewitnesses could hear the substance of his shouts. Hughes was leaning on the hood of the truck while Goodwin spoke to Johnson through the window of the driver's side. Suddenly, Goodwin backed away from the truck. Hughes drew his .44 magnum from his pants pocket and shot Johnson in the chest and arm while the truck was slowly moving backward. This eyewitness testimony corroborated Goodwin's testimony. Goodwin testified that Johnson yelled, "I told you if I had to kill you to get to him I would do it." He then grabbed her by the arms from inside the truck, and she pulled away. Goodwin testified that Johnson reached for a gun and she shouted, "He's got a gun." It appears that Hughes then shot Johnson to defend Goodwin.

Hughes does not challenge the sufficiency of the evidence to support the conviction. He argues in his first ground of error that the trial court erred by charging the jury that he had a duty to retreat before using deadly force in defense of a third person. The court charged the jury on defense of a third person in pertinent part as follows:

A person is justified in using deadly force against another when and to the degree he reasonably believes such force is necessary to protect a third person if, under the circumstances as he reasonably believes them to be, he believes such force and degree of force would be immediately necessary to protect himself against the unlawful deadly force he reasonably believes to be threatening the

---

1. Hodge testified that once Hughes discovered Johnson was behind them Hughes ordered her to stop by threatening her. Goodwin contradicted Hodge's testimony by testifying that she asked Hodge to stop.

third person he seeks to protect, *if a reasonable person in his situation would not have retreated,* and he reasonably believes that his intervention is immediately necessary to protect the third person.

\* \* \* \* \* \*

Therefore, even if you believe from the evidence beyond a reasonable doubt that the Defendant, John Madison Hughes, shot Rodney Lamar Johnson, as alleged, but you further believe, or if you have a reasonable doubt thereof, that, at the time he did so, the Defendant reasonably believed Rodney Lamar Johnson was threatening Joan Goodwin with unlawful deadly force and the Defendant reasonably believed the use of deadly force and the degree of deadly force used against Rodney Lamar Johnson would be immediately necessary to protect Joan Goodwin against such unlawful deadly force that he reasonably believed to be threatening Joan Goodwin, *and that a reasonable person in the Defendant's situation would not have retreated,* and that the Defendant reasonably believed that his intervention was immediately necessary to protect Joan Goodwin, you will find the Defendant not guilty.

However, if you believe from the evidence beyond a reasonable doubt that, at the time and place in question, the Defendant did not reasonably believe Rodney Lamar Johnson was threatening Joan Goodwin with unlawful deadly force, or that the Defendant did not reasonably believe the use of deadly force and the degree of deadly force used against Rodney Lamar Johnson would have been immediately necessary to protect Joan Goodwin against such unlawful deadly force that he reasonably believed to be threatening Joan Goodwin, *or that a reasonable person in the Defendant's situation would have retreated,* or that the Defendant did not reasonably believe that his intervention was immediately necessary to protect Joan Goodwin, you will find against the Defendant on this plea of justification. (Emphasis added.)

Hughes objected at trial to the charge on the ground that it misstated the law in that there is no duty to retreat before defending a third person.[2] For authority he cited *Dobbs v. State,* 51 Tex.Crim. 113, 100 S.W. 946 (1907), a case decided before the statute providing for the defense of a third person, TEX.PENAL CODE ANN. § 9.33[3] (Vernon 1974), was enacted. The court held in *Dobbs* that the law of retreat does not apply to one who is defending a third person. The trial court overruled Hughes' objection and submitted its charge to the jury as set forth above.

On appeal Hughes cites *Crawford v. State,* 629 S.W.2d 165 (Tex.App.—Waco 1982, no pet.), in support of his argument. The court construed § 9.33 in *Crawford* and concluded that the legislature did not intend to include the duty to retreat in § 9.33 by referring to § 9.32. *See* fn. 3 *supra.* The court noted that "to hold otherwise ... would require one who perceives another under attack by unlawful force, and believes that his intervention is

---

2. *See* McClung, *Jury Charges for Texas Criminal Practice,* at 293 (rev. ed 1985).

3. § 9.33. Defense of Third Person
   A person is justified in using force or deadly force against another to protect a third person if:
   > (1) under the circumstances as the actor reasonably believes them to be, *the actor would be justified under Section 9.31 or 9.32 of this code* in using force or deadly force to protect himself against the unlawful force or unlawful deadly force he reasonably believes to be threatening the third person he seeks to protect; and

   > (2) the actor reasonably believes that his intervention is immediately necessary to protect the third person. (Emphasis added.)
   This statute refers to sec. 9.32 which includes the duty to retreat as follows:
   § 9.32. Deadly Force in Defense of Person
   A person is justified in using deadly force against another:
   > . . . . .
   > (2) *if a reasonable person in the actor's situation would not have retreated;* .... (Emphasis added.)
   All references to sections are to the Texas Penal Code Annotated unless otherwise indicated.

immediately necessary to prevent the attack, to simply walk away if he can reasonably do so without injury to himself and leave the victim to the whims of the assailant." *Crawford, supra* at 168.

The State argues that *Dobbs* is distinguishable because no statute providing for defense of another existed when the case was decided. The State also argues that *Crawford* was decided wrongly by our sister court. The State insists that the duty to retreat under § 9.32(2) is incorporated into the defense of a third person by the reference thereto contained in § 9.33(1). Such a construction of § 9.33 would annul the justification for a homicide committed by one who comes to the aid of a third party under the circumstances prescribed by such section. The legislature by its enactment of § 9.33 obviously intended to provide a justification, excluding criminal responsibility, separate and apart from the right of self-defense, for conduct of an actor protecting third parties from unlawful attacks on their person as it existed under the common law of this State. *Dobbs v. State, supra;* TEX.REV.CIV. STAT.ANN. art. 5429b–2, § 3.03(1), (4), and (5). Section 9.33(2) requires that before an actor is justified in using deadly force against another to protect a third person, he must reasonably believe from *his viewpoint* that *his* immediate intervention is necessary, but no duty to retreat exists.

In the case at bar, we hold that the evidence raised Hughes' defensive theory of defense of a third person and that the charge of this issue (requiring Hughes to retreat before defending Goodwin, if a reasonable person in his situation would have done so) was erroneous. Hughes first ground of error is sustained.

In view of our disposition of this ground, it is not necessary that we consider Hughes' other grounds of error. The judgment of the trial court is reversed, and the cause is remanded for a new trial.