## Emilio Corpus v. The State.

### No. 3494.   Decided March 13, 1907.

Motion for rehearing overruled May 29, 1907.

**1.—Murder in Second Degree—Continuance—Impeaching Testimony.**

Where upon trial for murder, the motion for continuance did not show diligence, and the absent witness' testimony was for impeaching purposes, and the very nature of it could have been proved by other witnesses, there was no error in overruling the motion.

**2.—Same—Evidence—Impeaching Testimony—Written Statements of Witness.**

Where upon trial for murder, the State introduced a witness and proved by her that on the night of the homicide a brother of defendant did not assist him in ejecting the deceased from the dance hall, and on cross-examination the defendant for the purpose of contradicting said witness on portions of her testimony, introduced portions of the written evidence of said witness taken before the inquest, and the State on re-examination offered the remainder of said inquest testimony.   Held, that the same was pertinent to and explanatory of that introduced by defendant for the purpose of contradicting the witness.

**3.—Same—Rule of Evidence Stated.**

Where a portion of a written instrument is introduced by one side as original evidence, all of same can be introduced by the other side on the same subject; and this would apply to the written statement of a witness in a former examination.   However, if portions of the writing are introduced by one side not as original testimony but merely for the purpose of contradicting a witness, only such portions of the written instrument as are pertinent to and explanatory of that introduced by the other side can be offered in evidence.

**4.—Same—Alibi.**

Where upon trial for murder, a witness testified for the State that the first shot had killed deceased and that N. was in the dance hall at the time the first shot was fired, and defendant to impeach the State's witness introduced the written statement of the witness at the inquest, to show that the witness had testified that N. was not in the room, and that the second shot killed deceased, whereupon the State introduced the remainder of said written testimony, most of which was pertinent to and explanatory of the witness' written statement introduced by the defendant, some of which, however, was not necessary to a full and fair explanation thereof, yet in as much as the bill of exceptions did not produce this objectionable testimony, there was no error; especially as defendant relied upon an alibi.

Appeal from the District Court of Caldwell.   Tried below before the Hon. L. W. Moore.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*E. B. Coopwood, A. B. Storey,* for appellant.—The introduction by appellant of a part of the testimony, did not authorize the introduction of the entire testimony.   At most it could only authorize the introduction of such portion, of the testimony, as related to or explained, the portion introduced by the appellant.   Cox v. State, 8 Texas Crim. App., 254; Ford v. State, 51 S. W. Rep., 935; Jackson v. State, 26 S. W. Rep., 194.

*F. J. McCord,* Assistant Attorney-General, for the State.—When one side offers a part of a written statement the other side has the right to introduce the whole of the written statement. See Sentell v. State, 34 Texas Crim. Rep., 260; Jones v. State, 38 Texas Crim. Rep., 87, and Lee v. State, 44 Texas Crim. Rep., 460.

HENDERSON, Judge.—Appellant was convicted of murder in the second degree, and his punishment assessed at five years confinement in the penitentiary; and prosecutes this appeal.

The homicide appears to have occurred on the night of the 1st of September, 1906. There was a gathering of some sort, a festival or dance on the farm of John McKean, who lived in the vicinity of Prairie Lea in Caldwell County. The occasion appears to have been a Mexican entertaiment. During the dance a disturbance or altercation arose between appellant and one Benatura Saladana. The parties went out from the dance room on to the gallery, thence into the yard, and the State shows that appellant shot deceased with a pistol; two shots were fired, one of which took effect and caused the death of deceased. Appellant denied the shooting, and claimed that he was in the room; that the dance was going on at the time the shots were fired. This is a sufficient statement of the case.

Appellant made a motion for continuance, which was overruled, and this is assigned as error. Continuance was asked on account of the absence of John McKean, who was the owner of the premises. We do not believe the diligence for this witness was sufficient. Aside from this, the testimony in one aspect would have been for the purpose of impeaching the witness Transito Negrito. The application shows that appellant expected to prove by the absent witness McKean that Negrito told him after the homicide that he did not know who had shot the man. Continuances are not ordinarily granted for the purpose of procuring impeaching testimony. In addition to this, it is said that the said witness McKean would testify that if the shots were fired from the point testified to by Transito Nigarito, the shot that missed deceased would have embedded itself in the wall of the house; that he examined the wall and the ball was not there, nor was there any impression of the ball there. This character of testimony is merely speculative, as it would be difficult to tell what direction a ball would take after being discharged, or in what particular direction the shot was fired; the same being in the night-time. From the testimony of this witness Nigarito we learn that one shot struck him in the hand. This may have deflected the bullet from the direction that it is assumed the witness McKean would testify it should have taken. We do not believe this testimony is of sufficient importance to have required the court to grant the continuance; besides, from the very nature of the absent evidence, this fact could have been proved by other witnesses. The court did not err in overruling the motion for continuance.

Appellant reserved exception to the action of the court in admitting

the former testimony of Marie Barerra. The question is presented as follows: The State introduced said witness Marie Barerra and proved by her that on the night of the homicide Robert Corpus, a brother of the defendant, did not assist the defendant in ejecting the deceased Saladana from the dance hall. On cross-examination the defendant, for the purpose of contradicting said witness on portions of her testimony, introduced the written evidence of said witness taken before the inquest, or rather portions thereof, to wit: "I then saw Emilio strike Benatura Saladana, and Robert, the brother of Emilio, ran to him and they went outside." On re-examination, the State offered the remainder of the testimony of said witness taken at the coroner's inquest, as follows: "I was at the dance. I danced twice with Robert Corpus; there were just two dances. Then Emilio said, 'now everybody get out'; the dance then stopped and I sat down. I then saw Emilio strike Benatura, and Robert, his brother, ran up to help him, and they went outside, and then the shots were fired. Then I saw Emilio's mother take hold of him, and they left. We were not dancing when the shots were fired. I am picking cotton for Emilio's father on Mr. McKean's place. I live at home in San Marcos." This testimony elicited on re-examination was objected to on the part of appellant, on the ground, that it was not germane to the testimony elicited on cross-examination, was no part of the testimony elicited from said written examination and did not serve to explain or elucidate same. On the other hand, the State contends that this testimony was admissible, first, because under article 791, Code Criminal Procedure, the defendant, having introduced a part of the testimony taken at the coroner's inquest, the whole of said testimony on the same subject could be introduced, and second, that the balance of said written instrument, which was introduced by the State, was a part of that introduced by the defendant and explanatory of same, and necessary to a full understanding thereof. We believe, as a general proposition, when a part of a written instrument is introduced as original testimony by one party, all of said written instrument on the same subject between the same parties may be given in evidence. See Early v. State, 9 Texas Crim. App., 477; Cox et al. v. State, 8 Texas Crim. App., 254; Ford v. State, 51 S. W. Rep., 935, and Jackson v. State, 33 Texas Crim. Rep., 281, 26 S. W. Rep., 194. Does this hold good when a part of a written instrument is not offered as original testimony, but for the purpose of contradicting a witness upon some branch of the evidence? In Cox's case, supra, it appears that the testimony was clearly introduced for impeaching purposes; numerous extracts were read, selected to suit the purposes of defendant, from different portions of the former written statements of the witnesses. To meet these supposd contradictions, the prosecution, by permission of the court and over objection of defendant, read the entire evidence as taken down in writing at the two trials. This was objected to by defendant because the State was enabled to put before the jury new matter, a

portion of which had theretofore been ruled out by the court as illegal, inadmissible and offered as original evidence. The court, in passing on the question, made query whether or not our statute, which is now article 791, does not constitute a different rule where a part of a written instrument is introduced by one side for the purpose of impeachment, and render admissible, when introduced by the other side, all of the written statement, but this question was not decided, as the court held that the balance of the written statement introduced was germane to that portion originally introduced by the defendant. The court say, in this regard: "In our opinion, the admission of the entire evidence did not in the main go beyond the legitimate scope of the rules with regard to oral or verbal statements as above quoted, and so earnestly invoked by counsel for defendants; because the portions read by them as involving the supposed contradictions were so numerous, and comprehended so many and different aspects of the facts deposed to by the witnesses, that indeed it is almost impracticable, if not impossible, to separate the remaining portions so as to say that any of them were not necessary to an understanding, and directly explanatory of these supposed contradictory statements." In Ford's case, supra, the doctrine announced would seem to be that if a part of the written evidence of a witness taken on a former examination is introduced by one side, that only so much of the same as is pertinent to that which had been introduced can be offered by the other side. That case, however, went off on the character of the bill of exceptions to the testimony. We hold the correct rule on this subject to be as follows: Where a portion of a written instrument is introduced by one side as original evidence, that all of same can be introduced by the other side on the same subject; and this would apply to the written statement of a witness in a former examination. However, if portions of a writing are introduced by one side, not as original testimony but merely for the purpose of contradicting a witness, only such portions of the written instrument as are pertinent to and explanatory of that introduced by the other side can be offered in evidence. See 7 Ency. of Ev., pp. 92–128. In accordance with this view, we hold that all of the testimony of the witness Barerra, which was introduced in evidence by the State, was admissible, as the same was pertinent to and explanatory of that introduced by appellant. We do not understand this to have been original evidence offered by appellant in the first instance, but merely offered to contradict the witness, and as impeaching testimony.

Appellant reserved a bill of exceptions involving the same question above treated with reference to the action of the court in regard to the testimony of Santiago Saladana. This witness was introduced by the State, and stated that the first shot killed his brother Benatura Saladana, and that just before the trouble the witness Transito Negrito was in the dance hall at the time. The defendant then asked the witness on cross-examination if he had not testified on the examining trial

that the witness Transito Negrito was not in the room just before the trouble, to which he answered that he did not testify in the examining trial that the second shot killed his brother. The defendant then offered in evidence the following portions of said witness' testimony taken on examining trial, to wit: "When I went into the room Transito Negrito was not in the room. He was on the outside with his father." Defendant also offered the following portion of said witness' testimony taken on examining trial, to wit: "The second shot killed the deceased, and when the second shot was fired he fell to the ground." This testimony was offered for the purpose of contradicting said witness upon the two points. The State was then permitted, over appellant's objection, to introduce the remainder of said testimony, to wit: "I am a brother of the deceased. I was at the dance when he was killed. I was standing on the gallery just east of the door of the dance room when the first shot was fired. It was fired by the defendant. He was standing on the gallery just east of me when he fired the shot. My brother, the deceased, was just stepping off of the east end of the gallery when he was shot. There were two shots. I was stepping off of the east end of the gallery when the last shot was fired. Before the shots I was in the kitchen drinking coffee. I went in the dance room. They were dancing when I went in the dance room. The deceased was not dancing; was sitting down in front of the fireplace. Alfredo Farias, Antonio Lorez, Alfredo Escoban, and Francis Perez were standing in the dance room near the door. When I got in the room the music stopped; then the defendant came to me and told me I must get out of the room. I then went out on the gallery. The music started and they began to dance. There were a great many people on the gallery. Defendant did not go on the gallery with me. When I went in the room defendant was dancing. I don't know with whom. When I went in the room Transito Negrito was not in the room; was on the outside with his father. After I got on the gallery the music and dancing started, and while the dance was going on the defendant pushed deceased out of the door onto the gallery, and cursed him; said 'Get down, you son-of-a-bitch.' Defendant was mad and talked loud and was pushing the deceased to the east end of the gallery. The deceased was about three steps east of the gallery when defendant shot him. When the first shot was fired the dancing stopped in the room. Deceased was going east when he was shot. When deceased was shot he fell right down to the gallery on his side. I did not hear the deceased say anything after he was shot. After deceased fell I went to him right away and he was dead. Defendant was on the gallery when he shot the second shot and was about two steps further east. The second shot killed the deceased and when the second shot fired he fell to the ground. I was two steps further east on the gallery when the second shot fired. I saw the pistol in the defendant's hand. It was a white pistol. Just as defendant stepped out of the dance room door on to the gallery he pulled his

pistol from the left side." This testimony was objected to at the time because it contained matters and facts not testified to by said witness before the jury at this trial, and because the facts contained in said testimony were more damaging to the defendant than the testimony given before the jury, and because to admit said testimony would deprive the defendant of the right to be confronted by all the witnesses against him. The court, in explaining the admission of this testimony, states, as follows: "The defendant's counsel in a severe cross-examination sought to discredit the witness by proving a contradictory statement, and by intimations of his having given different testimony from that on the trial. Among other attempts to discredit the witness, the defendant's counsel asked him if he did not testify before the grand jury that at the time of the shooting he was in the kitchen drinking coffee; just before asking said question the defendant's counsel consulted, in the presence of the jury, one A. J. McKean, a member of the grand jury, who was present aiding in the defense, and thereafter because of the many attempts to discredit said witness, all of his former statements at the examining trial when introduced by the defense as a witness was allowed." With regard to this statement of the learned judge, it is sufficient to say that the mere attempt in cross-examination by defendant to break down the State's witness Santiago Saladana would not authorize the introduction of the testimony of this witness at other times, as before the grand jury, or on the same occasion, unless such testimony was pertinent to and connected with and explanatory of the testimony introduced by appellant on cross-examination from the witness' former statements. Adhering to the rule heretofore laid down, the only inquiry is, was the balance of the written testimony introduced by the State pertinent to and explanatory of that introduced on cross-examination by defendant for the purpose of contradicting the witness. It will be borne in mind that the witness had testified for the State on this trial that the first shot had killed deceased, and that the witness Transito Negrito was in the dance hall at the time the first shot was fired. Appellant, then to impeach said witness, introduced his former testimony as follows: "When I went into the room Transito Negrito was not in the room; he was on the outside with his father," and subsequently another portion of the testimony was introduced in contradiction, to wit: "The second shot killed deceased, and when the second shot was fired he fell to the ground." Now, with reference to the first matter, it would seem that it was considered important to show where the witness Negrito was at the time the first shot was fired, whether he was in the dance room or not; and also it seemed to have been an important consideration whether it was the first or second shot that had killed the deceased. These matters would appear to involve the whereabouts of this witness Saladana at that time, and what he saw as to the movements of Negrito, and what he saw as to the actual killing. Of course, it was explanatory of these matters upon which the witness had been contradicted to show

what he had testified to at the former trial in connection with said statements in regard to said matters. This testimony introduced by the State, when boiled down, shows that this witness testified to witnessing the homicide at the previous trial, and we believe it was competent in cross-examination to show, in explanation of his testimony introduced for the purpose of contradicting him, what he stated he saw with reference to the shooting and as to how he saw it as bearing on the contradictory statement adduced by appellant as to its being the second shot that killed deceased, and also as explanatory of his statement as to where Negrito was, we further believe it was competent for the State to show as was done by some of his testimony, what the witness stated he saw, in connection with the movements of Negrito. However, some of this testimony, it occurs to us, is not pertinent to the impeaching testimony introduced by appellant, and not explanatory of it. For instance, the State introduced these matters: "They were dancing when I went into the dance room. The deceased was not dancing; he was sitting down in front of the fireplace. When I got in the room the music stopped. Defendant came to me and told me I must get out of the room. I then went out on the gallery. The music started and they began to dance. Defendant did not go on the gallery with me. When I went in the room defendant was dancing. After I got on the gallery the music and dancing started, and while the dance was going on, defendant pushed deceased out of the door onto the gallery, and cursed him and said 'Get down, you son-of-a-bitch.' Defendant was mad and talked loud, and was pushing deceased to the east end of the gallery," etc. Now, it would seem that this testimony was not necessary to a full and fair explanation of that which the appellant had introduced from the statement of the witness for the purpose of contradicting this witness. Appellant says that this testimony was objectionable because it was stronger and covered other points not stated by the witness on this trial, but he does not produce in the bill of exceptions the testimony of said witness, nor is the statement of facts referred to on this point. A bill of exceptions should be complete in itself, and enough shown to support the objection that the points elicited were stronger than those testified to by the witness on the same subject. As presented, we are not informed that any testimony was adduced from this examining trial evidence which was different from that testified to by the witness on the trial of the case, much less that any was adduced which was stronger on any point than that testified to by the witness during the trial. Of course, we will only notice the objection raised to this testimony, which is as above stated, and not some other objection that might have been raised. It does not occur to us that appellant suffered any injury from the action of the court in admitting all of this testimony, and consequently we are not authorized to reverse the case, even though it be conceded that the court was not authorized to admit all of the examining trial evidence. We would further observe, as heretofore stated, that appel-

lant's defense was that of an alibi, his claim being that he was not present and did not fire the shot which caused the death of the deceased. The court fairly presented, we think, all the issues in the case, and from the facts proven the jury were fully warranted in returning the verdict they did; indeed, the testimony would have justified them in returning a much severer verdict.

There being no error in the record, the judgment is affirmed.

*Affirmed.*