### E. B. AKIN v. THE STATE.

#### No. 4030. Decided May 26, 1909.

**1.—Murder—Charge of Court—Adequate Cause—Insult of Female Relative—Time of Provocation. ,**

Where upon trial for murder the evidence showed a communicated insult of defendant's wife, and that at the first meeting defendant asked deceased if he had insulted his wife which the latter affirmed, whereupon he killed him; the court erred confining the provocation to the time of the commission of the offense in his charge on manslaughter; and this although the jury were instructed that they might consider all the facts and circumstances in evidence to determine defendant's condition of mind. Following Tucker v. State, 50 S. W. Rep., 711.

**2.—Same—Charge of Court—Murder in the Second Degree.**

Where upon trial for murder there was some evidence from which the jury were justified in believing that the defense interposed was an afterthought, the court did not err in charging on the law of murder in the second degree.

**3.—Same—Charge of Court—Insult of Female Relative—Defendant's Belief.**

Where upon trial for murder the evidence showed that defendant's wife informed him that the deceased had grossly insulted her, and that thereupon the deceased upon being questioned by defendant affirmed said insult, the court erred in limiting the adequate cause to defendant's belief based on the information received from his wife; and the affirmation of the insult by deceased was thus erroneously excluded.

**4.—Same—Evidence—Corroborating Testimony.**

Where upon trial for murder the defense was based upon insult to defendant's wife, and the State sought to attack her testimony as a fabrication, the defendant had the right to introduce testimony in corroboration that his wife had made similar statements to her sister.

Appeal from the District Court of Collin. Tried below before the Hon. J. M. Pearson.

Appeal from a conviction of murder in the second degree; penalty, eight years confinement in the penitentiary.

The opinion states the case.

*Abernathy, Abernathy & Abernathy,* for appellant.—Cited cases in the opinion.

*F. J. McCord,* Assistant Attorney-General, for the State.

RAMSEY, Judge.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a period of eight years.

Appellant and Palo Clancy were neighbors, both farmers, living near each other near the town of Anna, in Collin County. On the 16th day of May, 1907, appellant shot and killed Clancy. Appellant was a young man living on a farm with his wife, whom he had married but a few months prior to the homicide. She testified in substance that on Saturday, before the killing on Thursday, in the absence of her husband, deceased grossly insulted her by an exhibition of his person in such a manner as to constitute the gravest affront; that after this, on the following Thursday, Clancy came down near to her house, stopped his horse, and again exhibited his person to her, motioning to her to come to him; that she was at the time feeding chickens in the front yard, and went to the house and called her husband, who was plowing in the field; that her husband came to the house, sat down and ate his dinner, when she told him about the insult offered her by Clancy; that when she gave him this information he said he would go and see him about what he had done, and see what he meant by it; that he did not see what Clancy meant by doing as he had done; that appellant thereupon got up from the table and went out where a Mr. Bradshaw was plowing, and remained out there something like a minute or a minute and a half; that when he came back Clancy called him out where he was and asked him to hire or borrow his cotton planter, and her husband told him he could not get it, and asked him if he had insulted his wife before dinner, when Clancy said that he had done so, and that he did not care. A vigorous effort was made on the part of the State, and not wholly without success, to combat the testimony of appellant's wife, and to show the impossibility of the transactions occurring on Saturday, as testified to by her. She was also to some extent impeached by testimony of different and contradictory statements made on other trials, the details of which become unimportant for the purpose of this opinion. Almost immediately upon Clancy's admitting the improper conduct appellant fired and killed him.

1. Among other things the court instructed the jury as follows, in reference to the law of manslaughter: "By the expression 'under the immediate influence of sudden passion' is meant the provocation must arise at the time of the commission of the offense, and that the passion is not the result of a former provocation." This charge was excepted to by appellant at the time, and in connection with their exception a special instruction requested to the following effect: "You are instructed that, in determining the guilt or the innocence of the

defendant in this case, the matters must be viewed from the standpoint of the defendant, and the circumstances and environments which surrounded him at the time, and you can look at it from no other standpoint." And again, "You are instructed, in arriving at a verdict in this case, you must look at all the facts and circumstances from the standpoint of the defendant." Under the case of Tucker v. State, 50 S. W. Rep., 711, there can be no doubt, under the facts of this case, that the charge of the court complained of was erroneous. The only doubt we have is as to whether the nineteenth paragraph of the court's charge does not cure the error in the paragraph above quoted. This last numbered paragraph is as follows: "Although the law provides that the provocation causing the sudden passion must arise at the time of the killing, it is your duty, in determining the adequacy of the provocation, if any, to consider in connection therewith all the facts and circumstances in evidence in the case, and if you find that, by reason thereof, the defendant's mind at the time of the killing was incapable of cool reflection, and that said facts and circumstances were sufficient to produce such state of mind in a person of ordinary temper, then the proof as to the sufficiency of the provocation satisfies the requirements of the law, and so in this case you will consider all the facts and circumstances in evidence in determining the condition of the defendant's mind at the time of the alleged killing, and the adequacy of the cause, if any, producing such condition." We think, however, in view of the instruction of the court that the passion must not be the result of a former provocation, but must arise at the time of the commission of the offense, that the jury would understand that the information which appellant's wife had given him in respect to the insult offered by the deceased would afford no justification of itself, and could only be considered in aid of and as affecting the case, based on the admission of deceased, to the insult offered his wife. Here, under the proof, there were two conditions which would have reduced the homicide to manslaughter. If the jury should have believed that appellant's wife informed him of the insult to her by deceased, and that on the first meeting he shot and killed deceased, as a result of the passion engendered by this disclosure, his offense would have been that of manslaughter. The law is also that, with this information, appellant had the right to seek out deceased, and demand an explanation or disavowal of the alleged insult to his wife, and if on such approach it was admitted, this, under the decisions, would constitute adequate cause, and the law would, or might, apply the passion to the endorsement of the insulting language or conduct at the time of the last meeting. In the Tucker case, *supra*, it seems that the deceased had used very opprobrious language concerning Tucker's wife, which was communicated to him on the same night. It also appeared on the following morning that, in company with Snow and others, he met deceased, when Snow, in his presence, stopped deceased and inquired of him in respect to the statements made by deceased to Snow the evening

before, and asked deceased if he denied having made the statements. He made the reply: "No, I do not deny it; I said it," and at this juncture Tucker fired. Under this state of facts the court charged the jury "that the provocation must arise at the time of the commission of the offense, and that the passion is not the result of a former provocation." In addition thereto, the court, in the Tucker case, gives the following instructions: "Although the law provides that the provocation causing sudden passion must arise at the time of the killing, it is your duty, in determining the adequacy of the provocation, if any, to consider, in connection therewith, all the facts and circumstances in the case; and if you find that, by reason thereof, the defendant's mind, at the time of the killing, was incapable of cool reflection, and that said facts and circumstances were sufficient to produce such state of mind in a person of ordinary temper, then the proof of the sufficiency of the provocation satisfies the requirement of the law. So, in this case, you will consider all the facts and circumstances in evidence in determining the condition of the defendant's mind at the time of the alleged killing, and the adequacy of the cause, if any, producing such condition." In applying the law to the facts the court also charged: "If you believe, from the evidence, beyond a reasonable doubt, that the defendant, with a gun, being a deadly weapon, or instrument reasonably calculated and likely to produce death by the mode and manner of its use, in a sudden transport of passion, aroused by adequate cause, as the same is herein explained, . . . did unlawfully shoot, and thereby kill, Robert Ward, the deceased, as charged in the indictment, . . . you will find the defendant guilty of manslaughter," etc. In discussing this case Davidson, Presiding Judge, says: "Taking the charge as a whole, it is evident that the court limited the jury in their finding to the provocation arising at the time of the difficulty. Where insulting conduct or language is relied upon to reduce the homicide to manslaughter, the party is entitled, where the facts in evidence suggest the issue, to a charge in reference to the first meeting after the insulting conduct or language has been communicated; and in such case giving in charge the requirements of article 699, Penal Code, in reference to the provocation arising at the time, is erroneous. This question was discussed in the cases of Williams v. State, 24 Texas Crim. App., 637; 7 S. W. Rep., 333, and Eanes v. State, 10 Texas Crim. App., 421. We therefore hold it was error, under the facts of this case, to give the charge excepted to by appellant. Now, appellant had the right, on meeting the deceased on Saturday morning, after having been informed of the insulting language used by the deceased on the former evening, to ascertain from deceased if he had used the insulting language imputed to him by Snow in regard to his wife. He may have had some doubt on the subject, and to satisfy himself in regard to the matter he had the right to inquire as to the truthfulness of Snow's statements; and he had a right to have the law charged as to this state of facts. In other words, he was entitled to have the jury

charged with reference to the first meeting with deceased after being informed of the insulting language. He was also entitled to have the law given with reference to the condition of his mind at the time of the renewed statement or indorsement of the former statement of deceased in regard to his wife. See Richardson v. State, 28 Texas Crim. App., 216; 12 S. W. Rep., 870. Therefore, we are of opinion that the court erred (1) in charging the jury that they must consider only the provocation arising at the time of the difficulty, and (2) that he was entitled to have a charge on manslaughter, not only as to the insulting language, or the indorsement of the insulting language, at the time of the meeting, and at the time and place of the killing, but also of the insulting language used on the evening before." We think this decision is conclusive of the case, and must result in a reversal.

2. Complaint is made that the court erred in charging on the law of murder in the second degree. As appellant was convicted of this grade of homicide it is a proper subject matter of review. We are not prepared, in view of the entire evidence, to concur in this contention of appellant. There was some evidence from which the jury were justified in believing that the defense interposed was an after-thought. It can hardly be said that the testimony of the defense is so conclusive or so undisputably true, as a matter of law, to deny the State the right to a submission of the issue of murder in the second degree.

3. Complaint is made of the charge of the court in respect to the twenty-first paragraph thereof, wherein, in substance, the court instructs the jury that, if they believe Mrs. Akin informed her husband that deceased had been guilty of insulting conduct towards her in any respect, and that they should believe that appellant believed these statements, and if, on inquiry of deceased in respect thereto, he stated in substance that he had been guilty of the insulting conduct, the court uses this language: "And you further believe from the evidence that defendant, still believing what his wife told him to be true, was aroused by sudden passion, as hereinbefore explained," etc., they would find him guilty of no higher degree of homicide than manslaughter.. We think this charge is perhaps subject to the complaint and criticism made by appellant. If deceased, when accosted in respect to the alleged slanderous statements concerning his wife, admitted that he had insulted her, this would constitute, under the decision of this court in McAnear v. State, 43 Texas Crim. Rep., 518; 67 S. W. Rep., 117, a new and aggravated insult, and one doubly calculated to inflame his mind to such a degree of passion as to render it incapable of cool reflection, and would render unimportant the belief of appellant as to what his wife had theretofore told him.

4. A question is presented in the brief in respect to the admissibility of testimony of a statement made by Mrs. Akin to her sister on the Monday preceding the homicide. We would not reverse the case on account of this question for the reason that there is no bill of exceptions in the record preserving the point, but in view of another trial

we think it proper to say that, if the State should claim and contend, as is here done, that the testimony of Mrs. Akin, as to deceased's insults to her, was a fabrication, and pursues the same course of attack on her testimony as is here shown, we think it admissible for appellant to show, in corroboration of the testimony of his wife, that she had made, before the homicide, statements to her sister in keeping and harmony with the disclosures claimed to have been made by her to her husband. This doctrine, we think, is fully supported by the decisions of this court in Jones v. State, 38 Texas Crim. Rep., 87; 40 S. W. Rep., 807, and State v. Buffington, 4 L. R. A., N. S., 154; see notes, page 164.

There are a number of other questions urged on the appeal, but many of them relate to matters that are not likely to occur on another trial, and in respect to the contention made they are not of sufficient importance to demand discussion.

For the error pointed out the judgment is reversed and the cause remanded.

*Reversed and remanded.*

BROOKS, JUDGE, absent.