## JIM ALLEN v. THE STATE.

### No. 1210. Decided October 18, 1911.

### Rehearing denied January 3, 1912.

**1.—Murder—Continuance—Husband and Wife—Cumulative Testimony.**

Where, upon trial of murder, the defendant and his wife had testified substantially to the facts recited in the application for continuance, as expected to be proved by the absent witness, and which was uncontradicted by the State, it being the second application for continuance, there was no error in overruling the motion. D'avidson, Presiding Judge, dissenting.

**2.—Same—Reputation—Evidence—Truth and Veracity.**

Where, upon trial for murder, there was no effort made to impeach defendant by contradictory statements or otherwise, there was no error in not permitting defendant to prove his general reputation for truth and veracity.

**3.—Same—Evidence—Impeaching Witness.**

Where, upon trial of murder, the defendant sought to impeach a State's witness by showing that at the examining trial of defendant said witness had made statements contradictory of his evidence on the main trial, and then introduced a portion of said testimony for said purpose, there was no error in permitting the State to support the witness by introducing the entire testimony of the witness taken at the examining trial. Davidson, Presiding Judge, dissenting.

**4.—Same—Evidence—Bill of Exceptions.**

A complaint to the rejection of testimony as to the reputation of prosecuting witness can not be considered in the absence of a bill of exceptions.

**5.—Same—Requested Charge—Weight of Evidence.**

A requested charge which selected the evidence of a particular witness was correctly refused as being on the weight of the testimony.

**6.—Same—Charge of the Court—Manslaughter.**

Where, upon trial of murder, the court submitted the different degrees of murder and manslaughter, the defendant being convicted of murder in the second degree, there was no error in submitting the issue of manslaughter, and this whether the issue was raised or not.

**7.—Same—Charge of Court—Self-Defense—Apparent Danger.**

Where, upon trial of murder, the court in submitting self-defense instructed the jury that defendant had a right to act upon reasonable apprehension of danger as it appeared to him from his viewpoint, the contention that defendant had the right to act upon apparent danger, as well as real danger, did not show an injury to defendant, as the charge was more favorable than necessary.

**8.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder, the evidence sustained a conviction of murder in the second degree, there was no error.

**9.—Same—Continuance—Attachment.**

An application for continuance is not strengthened by embodying in same an application for an attachment, but must be ruled upon in accordance with the rules of law applicable to a second application for continuance, where this is the case.

**10.—Same—Continuance—Husband and Wife.**

While it is true that the State could not compel or require defendant or his wife to testify, yet, when they voluntarily took the stand as witnesses and testified to all the facts it was expected to be proven by the absent witness and which were not contested by the State, there was no error in overruling a motion for

new trial on account of not granting a continuance for this absent testimony. Davidson, Presiding Judge, dissenting.

**11.—Same—Evidence—Impeaching Witness.**

Where, upon trial of murder, the defendant sought to impeach and discredit the testimony of a State's witness by introducing a part of his testimony given at an examining trial, it was proper to permit the State to introduce all of the examining trial testimony of said witness in support of the testimony of said witness, and thus show that the first statement made by said witness in no material way differed from the evidence on the main trial. Davidson, Presiding Judge, dissenting.

Appeal from the District Court of Williamson. Tried below before the Hon. Chas. A. Wilcox.

Appeal from a conviction of murder in the second degree; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*A. S. Fisher, McGregor & Gaines, Allen & Allen,* for appellant.— On question of refusing motion for continuance: Roddy v. State, 16 Texas Crim. App., 502; Homan v. State, 23 Texas Crim. App., 212; De Warren v. State, 29 Texas, 465; State v. Jennings, 81 Mo., 185; Bill of Rights, sec. 10.

On question of admitting in evidence examining trial testimony of State's witness to support his testimony on trial: Red v. State, 46 S. W. Rep., 413.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, Judge.—In this case appellant was indicted by the grand jury, charged with murder, and upon being tried, he was convicted of the offense of murder in the second degree.

1. Appellant filed an application for a continuance, which being overruled, the action of the court was excepted to, and the first ground of the motion for a new trial is based on this bill. By the bill it is shown, that the witness, Lena Scott, had been duly subpoenaed, and the defendant expected to prove by said witness that she, the witness, told appellant that "deceased had told her to tell appellant to come up to the railroad where he was at work, and he would pay appellant the dollar he had borrowed from appellant's wife, and that she had told appellant these facts." The court, in approving the bill, states: "That appellant and his wife had testified substantially to the facts recited as expected to be proved by this witness, which testimony was not contradicted by the State." This was the second application based on the absence of this witness, and as the testimony was merely cumulative of other testimony in the record, which was uncontradicted, the court did not err. Harvey v. State, 35 Texas Crim. Rep., 545. If the testimony had been contested, inasmuch as it was only sworn to by defendant and his wife, there might be some ground for complaint, but as it was an uncontested fact, no injury appears.

2. Appellant also complains that he was not permitted to prove his general reputation, by the witnesses named, for truth and veracity. He was permitted to prove his general reputation as a peaceable and law-abiding citizen. Inasmuch as there is no suggestion in the record that there was any effort made to impeach defendant by contradictory statements or otherwise, the court did not err. The fact that the State's witness and the defendant conflicted in their evidence, furnishes no ground to support a witness by evidence of reputation for truth and veracity. Harris v. State, 45 S. W. Rep., 714; McGrath v. State, 35 Texas Crim. Rep., 413.

3. On the trial of this case the State witness, Joe Weathersby, was sought to be impeached by showing that at the examining trial of defendant he had made statements contradictory of his evidence in this trial, and the appellant introduced a portion of said testimony for said purpose. The State was then permitted to support the witness by introducing the entire testimony of the witness taken at the examining trial. The court, in approving the bill, states:

"I considered the testimony admissible for the following reasons: 1st. The defendant having introduced a portion of the statement, the State was permitted to introduce the whole on the theory that where one party introduces a portion of an instrument, the other party has the right to place the whole of the instrument in evidence. 2d. The defendant having sought to impeach the witness by showing conflicting statements, the State was permitted to introduce the whole of the witness' statement made on the examining trial, in order to support the testimony of the witness given on the trial of the cause in so far as it tended to do so. 3d. The defendant having introduced an isolated portion of the witness' testimony given on the examining trial, I deemed the whole statement admissible in order that the jury might determine whether the isolated statement truly reflected the meaning of the witness; and in order that the jury might consider the statement in the light of all that was said by the witness on the examining trial."

This presents no error. Bailey v. State, 9 Texas Crim. App., 98; Goode v. State, 32 Texas Crim. Rep., 503; Heith v. State, 38 Texas Crim. Rep., 327; Easterwood v. State, 34 Texas Crim. Rep., 401; Streight v. State, 62 Texas Crim. Rep., 453, 138 S. W. Rep., 742.

4. We can not consider that ground in the motion for a new trial, complaining of the rejection of testimony as to the reputation of the prosecuting witness, there being no bill of exceptions in the record reserved to this action of the court. In the absence of a bill of exceptions, we must conclude that such matters did not occur.

5. There was no error in the court refusing to give special charge No. 2 requested by appellant. To select the evidence of any witness and thus charge, would be upon the weight to be given the testimony.

6. All the other assignments relate to the charge of the court, and complaint is made that error prejudicial to defendant was committed because the court submitted the issue of manslaughter as well as mur-

der in the first and second degree. At most, all this could have resulted in was to authorize the jury to find the appellant guilty of a less offense than they did find, and assess a less penalty, and this would not be injurious to appellant. There is nothing in this portion of the charge that could or would be instrumental in causing the jury to convict defendant of murder in the second degree, presents clearly the law applicable to manslaughter under the facts in this case, and did not mislead the jury on the issue of self-defense, for in said charge on manslaughter the court instructs the jury in regard to the assault testified to by defendant: "However, if such assault and battery, if any, be sufficient to constitute self-defense, under the instructions hereinbefore given, then in such case the defendant would be entitled to an acquittal." Without expressing an opinion as to whether the evidence raises the issue of manslaughter, we hold that in submitting the issue in the manner it was submitted, could not have been prejudicial to appellant.

7. The other paragraphs of appellant's motion complain of the charge of the court in presenting the law of self-defense. In defining the law applicable to murder in the first and second degrees, the court also defined self-defense and informed the jury:

"Every person is permitted by law to defend himself against any unlawful attack, reasonably threatening or appearing to threaten injury to his person, and is justified in using all the necessary and reasonable force to defend himself, but no more than the circumstances reasonably indicate to be necessary. Homicide is justified by law when committed in defense of one's person against any unlawful and violent attack, made in such a manner as to produce a reasonable expectation or fear of death or some serious bodily injury."

Later in the charge, when applying the law of self-defense as applicable to the facts in this case, the court instructed the jury: "A reasonable apprehension of death or great bodily harm will excuse a party in using all necessary force to protect his life or person, and it is not necessary that there should be actual danger, provided he acted upon a reasonable apprehension of danger as it appeared to him from his standpoint at the time, and in such case the party acting under such real or apparent danger is in no event bound to retreat in order to avoid the necessity of killing his assailant.

"If, from the evidence, you believe the defendant killed the said John Spencer, but further believe that at the time of so doing, the deceased had made or was making an attack on him which, from the manner and character of it and the relative strength of the parties caused him when viewed from the defendant's standpoint, to have a reasonable expectation or fear of death or serious bodily injury, and that acting under such reasonable expectation or fear, the defendant killed the deceased, or if you have a reasonable doubt as to whether or not such are the facts, then you should acquit him; and if the deceased was armed at the time he was killed, and was making such

attack on defendant, and if the weapon used by him and the manner of its use was such as were reasonably calculated to produce death or serious bodily harm, then the law presumes the deceased intended to murder or aimed to inflict serious bodily injury upon the defendant."

The objections to the first paragraph, defining self-defense, are all covered when the court applied the law to this case in the later clauses. The jury was informed that he had a right to act "upon a reasonable apprehension of danger as it appeared to him from his viewpoint." The criticism of these paragraphs that the appellant had the right to act from "apparent danger" as well as "real danger," do not show any injury to appellant. If, as appellant contends, the testimony of defendant presents actual danger alone, the fact that the court presented the law more favorably to appellant than the facts justified, would not be injurious to him and he could not complain. But in reading the last paragraph of the law of self-defense, as applied by the court to this case, it will be seen the charge is not subject to this criticism.

Appellant proved that he had heretofore borne a good reputation as a peaceable, law-abiding citizen, and the jury found with his contention, that the killing was not premeditated, and in going to the place where deceased was at work, he was not actuated by express malice, but was on a lawful mission. However, they found against his theory that he was in danger of losing his life or suffering some serious bodily injury, and found that he was not justified in killing deceased, but that he did so without justification, and without adequate cause to reduce the homicide to manslaughter. There was no error committed by the court in the trial of the case as presented by the bills of exception, and the court fairly submitted all the issues in his charge. The judgment is affirmed.

*Affirmed.*

Davidson, Presiding Judge, absent.

### ON REHEARING.

#### January 3, 1912.

HARPER, JUDGE.—At a former day of this term this case was affirmed, and appellant has filed a motion for rehearing, insisting that the court erred in holding that the trial court did not err in overruling his motion for a continuance, alleging that in the motion for a continuance, was also an application for a writ of attachment, and stating that the application contained the following language: "That this defendant has reasonable expectation of procuring the testimony of the said witnesses, Lena Scott and Eliza Manning, at the next term of this court, and he now asks this court to cause to be issued for said witnesses, an attachment, procuring and securing their attendance as witnesses in this case at the next term of this court in behalf of this defendant." If the court had continued the case, he should, and doubtless would, have granted the application for a writ of attachment, but

we fail to see how an application for an attachment, being embodied in the application for a continuance, would add any strength or force to the application for a continuance. This application must be, and doubtless was, acted on in accordance with the rules of law applicable to a second application for a continuance. The witness, Eliza Manning, attended, and the record shows that the cause had been continued the term before on account of the absence of the witness, Lena Scott. In this second application for a continuance on account of the absence of this witness, appellant stated he expected to prove by her, that "deceased had told her to tell defendant to come up there, and he (deceased) would pay defendant the one dollar he owed his wife, and that she told these facts to the defendant." This is all that it is stated that it is expected to be proved by this witness, and it was pertinent testimony as explaining the reason why defendant had gone to where deceased was at work, but on the trial of the case, the defendant himself testified that the witness had told him these facts, and this was the reason why he had gone up there. No person testified otherwise, but in addition to the defendant's testimony, his wife also testified that she heard Lena Scott tell her husband that morning that deceased had told her to tell him to come to where he was at work, and he (deceased) would pay the dollar he was owing, and that defendant said he was going up there to collect the money. This testimony was undisputed by any witness, and the record being in this condition, was it error for the court to overrule the motion, or to refuse to grant a new trial, because the attendance of the witness was not obtained? The statutes provide that in the second application, he must swear "that the testimony can not be procured from any other source known to the defendant." In this instance it appears there was another source, and it was obtained from such source. (Laudermilk v. State, 83 S. W. Rep., 1107.) This court has held that a second application for continuance for absent witnesses is properly overruled, and defendant can not be heard to complain, where it appears that the same facts have been proved by witnesses testifying at the trial. Easterwood v. State, 34 Texas Crim. Rep., 400; Halliburton v. State, 34 Texas Crim. Rep., 410; Bluman v. State, 33 Texas Crim. Rep., 43; Jackson v. State, 31 Texas Crim. Rep., 552; Duncan v. State, 30 Texas Crim. App., 1; Blackwell v. State, 29 Texas Crim. App., 194; Brown v. State, 23 Texas Crim. App., 214; Walker v. State, 13 Texas Crim. App., 618; Beatey v. State, 16 Texas Crim. App., 421; Allison v. State, 14 Texas Crim. App., 402; Hooper v. State, 29 Texas Crim. App., 614; Parkerson v. State, 9 Texas Crim. App., 72; Bush v. State, 40 Texas Crim. Rep., 539; Petty v. State, 59 Texas Crim. Rep., 586; Fulkerson v. State, 57 Texas Crim. Rep., 81, and authorities there cited; Buckner v. State, 55 Texas Crim. Rep., 511; Dobbs v. State, 54 Texas Crim. Rep., 579. Numerous other authorities could be cited holding that it is not error for the court to overrule a second application for a continuance where the evidence is merely cumulative of that adduced

on the trial, and especially is this true where the testimony is uncontradicted by the State's evidence, as is the case in this instance. It is true that the State could not compel or require defendant or his wife to testify, but when they voluntarily take the stand as witnesses, they stand in the same attitude as other witnesses, and as they testified to all the facts alleged, it was expected to be proven by the absent witness and which statements were not contested by the State, but were wholly uncontradicted, to hold that a court should grant a new trial to obtain the testimony of a witness to testify to facts in evidence uncontroverted, would be an absurdity. In the case of Bush v. State, 40 Texas Crim. Rep., 541, the court says: "Even where the testimony is material and probably true, a continuance will not be granted, unless such absent testimony would, if adduced, probably induce a more favorable verdict to the accused than that found by the jury." In this case, all the testimony of this witness would do, would tend to show that it was not a premeditated murder, and the jury had found that it was not.

Appellant also insists that the court erred in permitting the State to support its witness, Joe Weathersby, by proving and introducing in evidence the first statement of this witness given at the examining trial, which was made shortly after the killing. When this witness was placed on the stand by the State, on cross-examination, defendant asked him if he had not said to defendant, shortly after the killing, in the presence of Frank Piper and Cleveland Parker, "I will do all I can to give you twenty-five years in the penitentiary," and when the witness denied making this remark, the defendant placed the two witnesses on the stand who testified they heard the State's witness make that statement. Again, the State's witness, Weathersby, was asked on cross-examination if at the examining trial he did not state "I had just heard Jim Allen say, 'Well, you ain't going to pay it;' I heard a scuffling and then heard the shot," and when he denied making such statement, the defendant placed S. O. Tisdale on the witness stand to prove that he did make such statement, and introduced that portion of the testimony taken at the examining trial. There were but two eye-witnesses to the killing, Weathersby, the State's witness, and defendant, and there was a sharp conflict in their testimony, and this latter statement was introduced for the purpose to show that he had stated he did not see the shooting, when his testimony on this trial, and at the examining trial, minutely described the action of both men prior to and at the time of the shooting. The other impeaching testimony was introduced to show animosity, and that his story at this trial was manufactured to carry out the threat that he is said to have made, by the witnesses Piper and Parker, both of whom were employes of defendant. Having thus sought to impeach and discredit the testimony of the State's witness, it was permissible and proper for the State to introduce evidence in support of its witness, and prove that the first statement made by him in no material way differed from the evidence on this trial, and to introduce such statement for this

purpose. Akin v. State, 119 S. W. Rep., 863; Jones v. State, 38 Texas Crim. Rep., 87; Sullivan v. Fant, 51 Texas Crim. Rep., 6, 110 S. W. Rep., 507; Simpson v. State, 46 Texas Crim. Rep., 551; Lounder v. State, 46 Texas Crim., 121; Bozeman v. State, 34 Texas Crim. Rep., 503; Duke v. State, 35 Texas Crim. Rep., 283; Sanders v. State, 31 Texas Crim. Rep., 525; Cornway v. State, 33 Texas Crim. Rep., 327; English v. State, 34 Texas Crim. Rep., 190; Riojas v. State, 36 Texas Crim. Rep., 182; Kimball v. State, 37 Texas Crim. Rep., 230; Bell v. State, 20 S. W. Rep., 362; Stephens v. State, 26 S. W. Rep., 728; Dicker v. State, 32 S. W. Rep., 541; Parker v. State, 34 S. W. Rep., 265; Cox v. State, 44 S. W., 157; Keith v. State, 44 S. W. Rep., 849; Porter v. State, 50 S. W. Rep., 380; Poyner v. State, 51 S. W. Rep., 376; Jones v. State, 25 S. W. Rep., 634. Judge Hurt discusses this question at length in the case of Craig v. State, 30 Texas Crim. App., 619, and in a recent case, Hardin v. State, 57 Texas Crim. Rep., 401, Judge Davidson, speaking for the court, says: "The State having attacked the witness by showing statements made contradictory to what he testified, *it is clearly permissible* for appellant to introduce testimony to the effect that witness had made similar statements shortly afterwards which were in consonance with his testimony on the trial."

Motion for rehearing is overruled.

*Overruled.*

DAVIDSON, Presiding Judge, (dissenting).—I was not present, and therefore did not participate in the original disposition of the case wherein my brethren affirmed the judgment of the court below. On motion for rehearing, the majority have overruled the same, adhering to the former opinion. To this I most respectfully enter my dissent.

1. Sustaining the action of the trial court overruling the application for a continuance, my brethren treat the defendant and his wife as witnesses in the case—as if they stood in the same category as if one was not the defendant and the other his wife. In other words, they treat the defendant and his wife as ordinary witnesses in the case. I am not aware of any opinion heretofore rendered so holding. The Constitution provides that the defendant shall not be compelled to give evidence against himself, and under no circumstances heretofore has he been treated as a witness in the case. The same may be said of the wife. She can only testify for her husband and not against him, except in cases where there is violence on the part of the husband against the wife. This is not that character of case; as I understand the law with reference to the production of testimony and the granting or refusal of a continuance, the witnesses under such circumstances are those only who can be compelled to testify. The testimony of husband and wife, therefore, can not be treated as cumulative evidence, or regarded from that standpoint in application for continuance. The rule is laid down by my brethren in this case that the defendant and his wife are to be treated as ordinary witnesses and forced to testify. This is not the

law under the Constitution or by any statutory enactment. The absent testimony was fully material and tended to solve one of the most important issues in the case, to wit: who began the difficulty, or who was responsible for its initiation. If the defendant was, his case would be placed in an entirely different and more unfavorable light before the jury that it would if the deceased began it. If deceased began it, appellant would stand much more favorably before the jury and the law. While this, in a sense, may be treated as a second application, still it is not to be treated here as if the absent testimony was cumulative. Under the law in this State, the testimony of the husband and the wife is not to be so treated and is placed on entirely different grounds from that of the ordinary witness. The cases cited in the majority opinion, in regard to cumulative evidence, therefore, are not in point and are not applicable. If the testimony of the defendant and his wife is to be treated in the light of the evidence of ordinary witnesses, that would force the defendant to place himself and wife upon the stand as witnesses. I think my brethren are in error upon this ruling. They would scarcely assert that an accused person must use himself and wife as witnesses as a means of defending his application for continuance. This would be the only conclusion from their opinion. The defendant was entitled to the continuance. The testimony was very material.

2. A bill of exceptions reserved by the appellant shows that the State, while the witness, Weathersby, was on the stand in behalf of the State, the defendant, on cross-examination of the witness, asked him if it was not a fact that he had testified in the preliminary hearing of the case in the Justice Court held in Round Rock, in July last, to which he answered, "Yes." He was then asked: "Is it not a fact that at said preliminary trial you testified to the following facts: I heard Jim Allen say (to the deceased), 'Well, you ain't goin' to pay it.' I then heard scuffling and then heard a gun fire. I did not see any scuffling." To which the witness answered: "I did not testify in the preliminary hearing before the justice of the peace that I heard scuffling and then heard a gun fire." Whereupon, the defendant introduced as a witness, S. O. Tisdale, and proved by said witness, Tisdale, that he was justice of the peace and held the examining trial last July at Round Rock, in the case of the State against Jim Allen, and the testimony at that time was reduced to writing, which writing was identified by said witness as the written testimony taken upon the examining trial of said cause as the testimony of the said Joe Weathersby, and he read therefrom as follows: "I heard a scuffling and then heard a gun fire." Whereupon, the State then offered in evidence the whole of the testimony of the said Joe Weathersby testified to by him in said preliminary hearing as follows. "Joe Weathersby, being sworn, testified: I am working on the M., K. & T. section just south of Brushy Creek. John Spencer acted as boss when the foreman, Mr. Sansom, was away. Myself, John Spencer, and five Mexicans were all there on Saturday

morning; about 9:45, Jim Allen came to where we were; he had a shotgun, a single barrel breech loader; Jim Allen came up and I says, 'It seems like you are going hunting;' he says, 'No, not exactly; the crows are bothering my corn.' Then we got to talking about the weather, and about the need of rain; no one was talking like they was mad. We talked a little while and Jim Allen sat down on the end of a tie. John Spencer told me to spike down a rail and I went about twelve feet to drive the spike; just about the time I started, Jim Allen got up; when he did so, he said something to John Spencer; said that he had told Jim Allen's wife that he would see him (Jim) and settle it, and they would settle it. I had gotten to where I was to drive the spike, about twelve feet off, and looked back and saw Jim Allen with his gun up in shooting position. I had just heard Jim say, 'Well, you ain't going to pay it?' I heard a scuffling and then heard the gun fire. John Spencer did not have anything in his hand at the time. I did not at any time see Spencer trying to hit Allen. When the gun fired there was a great deal of smoke, but as soon as I could see, I saw Jim Allen run across the track and unbreech his gun and put in another shell, and I saw John Spencer laying on the ground. I then said to Jim Allen, 'Mr. Allen, there was no need of that; if you had talked to me we would have settled it.' He said that John Spencer came at him with a maul. I told him that if he did I did not see it. Jim Allen left while I was talking to him. I went to Spencer at once, and he was gasping his last; he died right off. The Mexicans were about twenty feet from Allen and Spencer at the time of the shooting. At the time John Spencer told me to go and drive the spike, Spencer's maul was lying down by the side of the track; when I came to Spencer just after the shooting, the maul was lying in the same place and in the same position." To the introduction of which testimony, except as to the part offered in evidence by the defendant, to wit: "I heard a scuffling and then heard a gun fire," the defendant then and there, at the time, urged the following objections and exceptions: First, because the balance of said testimony was not sought to be impeached by the defendant and was, therefore, inadmissible, being nothing more than hearsay testimony, and the same was not in aid of the question of impeachment. Second, that it did not in any way explain the matter about which he had been impeached, namely: "I heard a scuffling and then heard a gun fire," which objection was then and there overruled. The court admitted this with the explanation that he considered the testimony admissible because the defendant, having introduced a portion of the statement, the State was permitted to introduce the whole on the theory that where one party introduces a portion of an instrument, the other party has the right to place the whole of the instrument in evidence. Second, that the defendant having sought to impeach the witness by showing conflicting statements, the State was permitted to introduce the whole of the witness' statement made on the examining trial, in order to support the testimony

of the witness given on the trial of the cause insofar as it tended to do so. And, third, the defendant having introduced an isolated portion of the witness' testimony given on the examining trial, he deemed the whole statement admissible in order that the jury might determine whether the isolated statement truly reflected the meaning of the witness, and in order that the jury might consider the statement in the light of all that was said by the witness on the examining trial.

My brethren hold there was no error. I do not care to go into a discussion of the reasons advanced by the opinion on rehearing. They speak for themselves. This evidence was introduced solely for the purpose of impeachment, not as original testimony. It is a rule made by statute that where a witness is sought to be impeached by statements made on the examining trial, he can be sustained by other things stated at the time which serve to explain that particular statement or phase of his testimony. This is the limit under the statute to which this character of supporting evidence can be introduced. The statute excludes any testimony in regard to any other matters than that in which the impeachment was sought. The State or defendant, as the case may be, can not introduce all of the testimony taken on the examining trial, but is limited to that part of the testimony which is corroborative or explanatory of that about which he is sought to be impeached. This is the universal rule, not only under the statute, but under all the authorities. I cite a few cases in support of this. See St. Clair v. State, 49 Texas Crim. Rep., 479; Red v. State, 39 Texas Crim. Rep., 414; Messer v. State, 43 Texas Crim. Rep., 97, and cases cited on p. 106; Irby v. State, 25 Texas Crim. App., 214; Woodward v. State, 42 Texas Crim. Rep., 188; Satterwhite v. State, 6 Texas Crim. App., 609; Kunde v. State, 22 Texas Crim. App., 64; Ford v. State, 41 Texas Crim. Rep., 1; Casey v. State, 50 Texas Crim. Rep., 392; Corpus v. State, 51 Texas Crim. Rep., 315. These lay down the proposition that where a part of a statement is proved, it is error to permit the other side to prove all that occurred unless it is a part of the same subject and is necessary to make fully understood or explain the part offered by the other party. It will be noticed that the court permitted the entire testimony of the witness, Weathersby, taken at the examining trial, to be read before the jury, nearly all of which did not tend to explain or elucidate the question about which the impeachment or attempted impeachment occurred. This was clearly error. My brethren treat the bill of exceptions as if the entire examining trial testimony was not introduced.

Without elucidating the matter further, I most respectfully enter my dissent. The judgment in this case should be reversed and the cause remanded.