## BART KINCAID v. THE STATE.

#### No. 1561.    Decided March 6, 1912.

**1.—Murder—Charge of Court—Murder in the Second Degree.**

Where, upon trial of murder, the court's charge on murder in the second degree authorized the jury to convict defendant of that degree whether he killed deceased upon malice or under adequate cause or in self-defense, the same was reversible error.

**2.—Same—Charge of Court—Going Armed—Demanding Explanation.**

Where, upon trial of murder, there was evidence of insulting conduct by deceased towards defendant's wife, a charge which instructed the jury that if defendant went in search of deceased to demand an apology for said insult, he would be guilty of murder if he shot deceased on account thereof without demanding an apology, was reversible error.

**3.—Same—Charge of Court—Provoking Difficulty—Self-Defense.**

A charge of the court which made the mere seeking by defendant of deceased to demand an apology, being armed with a pistol, thereby bringing on the difficulty, a forfeiting of the right of self-defense, without requiring that by words or acts he did provoke the difficulty, is reversible error.

**4.—Same—Charge of Court—Provocation.**

Where, upon trial of murder, the evidence showed that the defendant was informed by his wife shortly before the homicide that deceased had insulted her, whereupon, defendant said that he would go and see him about it, and as he approached deceased, the latter drew his pistol on defendant who then shot and killed him, a charge of the court which confined the provocation

to the time of the commission of the offense, and did not instruct the jury as to a first meeting of the parties, was reversible error.

**5.—Same—Rule Stated.**

With reference to the insulting conduct towards a female relative, it is not necessary that it occur at the time of the killing; the legal status of the slayer is the same whether it occurs at the time óf the killing or on the first meeting of the slayer with the deceased after being informed of such insulting conduct.

**6.—Same—Evidence—Knowledge of Defendant.**

Before testimony of matters occurring in the absence òf the defendant can be introduced in evidence, it must be in some way shown that he had knowledge thereof.

Appeal from the District Court of Caldwell. Tried below before the Hon. B. G. Neighbors, Special Judge.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*E. P. Coopwood,* for appellant.—On question of the court's charge on provocation: Eanes v. State, 10 Texas Crim. App., 421; Martin v. State, 51 S. W. Rep., 912; Stewart v. State, 52 Texas Crim. Rep., 273, 106 S. W. Rep., 685; Jordan v. State, 60 Texas Crim. Rep., 178, 137 S. W. Rep., 133, and cases cited in opinion.

On question of court's charge as to defendant's right to demand an apology as to insulting conduct to female relative: King v. State, 13 Texas Crim. App., 277; White v. State, 23 id., 154; Alexander v. State, 25 id., 260; Johnson v. State, 26 id., 631; Thurston v. State, 21 id., 245; Roach v. State, id., 249; Carter v. State, 35 S. W. Rep., 378; Winters v. State, 40 S. W. Rep., 303; Tollett v. State, 55 S. W. Rep., 573; Tilmyer v. State, 58 Texas Crim. Rep., 562.

On question of court's charge on provoking the difficulty: Meuly v. State, 26 Texas Crim. App., 274, and cases last above cited.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, PRESIDING JUDGE.—Appellant was convicted of murder in the second-degree, his punishment being assessed at five years confinement in the penitentiary.

1. Applying the law to the case the court gave the following charge:

"If you believe from the evidence, beyond reasonable doubt, that the defendant, in the county of Caldwell and State of Texas, on the 24th day of February, 1911, as alleged, with a deadly weapon did shoot and thereby kill Estell Corbell as charged in the indictment, you will find him guilty of murder in the second degree, and assess his punishment at confinement in the State penitentiary for any

period. that the jury may determine and state in their verdict, provided that it be not less than five years."

This charge is presented as a ground for reversal. The objections were timely and properly urged. We have been called upon on divers occasions to reverse judgments on account of giving a charge in the language here employed. Under the terms of this charge the jury was authorized to convict appellant whether he killed the deceased upon malice or manslaughter under adequate cause, or in self-defense. The charge is erroneous. It is unnecessary to cite the authorities.

2. The court gave this charge: "You are further instructed that if you believe from the evidence that defendant went in search of the deceased with the purpose and intent of demanding an apology for insulting conduct toward his wife, and on reaching deceased defendant immediately fired the shot that killed the deceased without demanding an explanation of his conduct, then such shooting would not reduce the killing to manslaughter nor would it justify defendant in the killing. If you find that he sought the deceased with a pistol and did thereby bring on the difficulty and provoke the necessity of the killing of deceased and under such circumstances the defendant did shoot and kill deceased he can not justify upon the ground of self-defense, nor would said killing be reduced to manslaughter unless the defendant's mind at the time he shot deceased was rendered incapable of cool reflection by reason of said insult to his wife, if any, in that event you will find defendant guilty of manslaughter and assess his punishment as before defined."

This charge is contradictory and incongruous, and does not state the law. It is not the law that if appellant went in search of deceased intending to demand an apology for the insult given his wife, that he would be guilty of murder if he shot deceased on account of such insulting conduct without demanding an apology, but the court so instructs the jury.

Nor is it the law that if appellant went where deceased was with a pistol, that he would lose his right of self-defense, or be guilty of provoking the difficulty. If he went where deceased was armed with a pistol, he would not be guilty of provoking a difficulty, unless he said something or did some act which was calculated to bring about the difficulty. The authorities are so numerous on this proposition that it is hardly necessary to cite them, but for a collation of these cases see Branch's Criminal Law, section 467. The proposition there is tersely and correctly stated, as follows: "Charge is error which makes the mere seeking a party with intent to provoke a difficulty forfeit the right of self-defense, and omits to require the jury to find that by words or acts defendant did provoke it."

If appellant had been informed, as his testimony shows he had been, that deceased had used insulting remarks and conduct to and towards his wife, and she had informed him of those matters, as he and she both testified she did, and they are corroborated by other

evidence, then appellant, from the standpoint of manslaughter, would have the right to kill, subject, of course, to punishment for manslaughter, whether he ever mentioned the matter to deceased or not. His legal status with reference to manslaughter under such circumstances would not depend upon whether he demanded an apology or not.

3. Exception is taken to another clause in the charge, to wit, that the provocation must arise at the time of the commission of the offense and that the passion must not be the result of a former provocation. The court also gave a charge that insulting words or conduct of the person killed towards the female relation of the party guilty of the homicide constitutes adequate cause. But gave no charge in regard to first meeting with deceased after being informed of the insulting conduct. Defendant was not present when the insulting conduct was offered his wife. The killing occurred upon the first meeting thereafter and not at the happening of such conduct.

The facts in this connection, as disclosed by the record, are about, in substance, as follows: There was a party at the residence of Mr. Anderson. Appellant, his wife and deceased attended that party. Late in the evening and just before the termination of the social gathering there came up a dispute between deceased and two other attendants, who were brothers, by the name of Fogle. Deceased insisted that the last dance should be what the witnesses termed a "two-step." The Fogles insisted the dance should be what is termed a "square dance." Some words passed between the parties, and finally the floor manager, Mr. Anderson, decided that the dance should be the "square dance." One word brought on another until one of the Fogles remarked that Corbell might run things up where he lived, but he could not run things down there, meaning the neighborhood where the dance was had. Mr. Corbell, the deceased, lived in another neighborhood. The parties "drifted" along to the door which led out on the gallery. The wife of defendant testifies that as deceased was passing from where the fiddlers were through the door he ran against her and she protested; that he used rude and insulting remarks to her to the effect that if she did not want to get run over, "God-damn you, get out of the way." She then said, "I will inform my husband." Deceased told her "go tell the damn son-of-a-bitch." She went to where her husband was sitting in a distant corner of the room, while the Fogles and deceased went to the door. Without repeating the language used between the parties during their quarrel at that point, it finally resulted in Fogle striking the deceased with his fist, though there is some evidence which indicated he may have struck him with knucks or something other than his fist. There was a cut over the eye of the deceased which indicated that something else was used than the fist. Be that as it may, the deceased then pulled his pistol. Mrs. Kincaid, in the meantime, had informed her husband of what had occurred. After being fully apprised of the

matter through his wife, appellant remarked, "I will go and see him about it," and started in the direction of the gallery where deceased was, in front of the door.

Appellant's contention, which is sustained by quite a lot of the testimony, is that as appellant approached, the deceased threw his pistol down in appellant's face and "snapped it." When he did that appellant drew his pistol and began firing, the difficulty resulting fatally to deceased. Some of the evidence for the State is to the effect that as appellant approached ·the deceased he had his pistol in his hand, thus contradicting appellant and his witnesses as to the time he drew his pistol. There is some evidence for the State to the effect that deceased did not snap his pistol, but that he was in the act of putting his pistol in his waistband at the time appellant shot. The deceased fell on the gallery and died almost instantly. His pistol was found on the floor by him or under him.

It is conceded that deceased had his pistol out before and at the time appellant was approaching him, the conflict in the testimony being as to what deceased did as appellant approached. Under these circumstances, we are of opinion that the court was in error in limiting the provocation or adequate cause to the time of the commission of the offense.

With reference to the insulting conduct towards a female relative, it is not necessary that it occur at the time of the killing. The legal status of the slayer is the same whether it occurred at the time of the killing or on the first meeting of the slayer with the deceased after being informed of such insulting conduct. There is no testimony in the record to show that appellant was aware of the insulting conduct at the time it occurred, nor was he aware of it, until after his wife had communicated it to him. Upon being so informed, he said he would see about the matter, and went in search of the deceased. Before demanding an apology or asking him about the matter, the killing occurred. Under these circumstances it has been held uniformly by this court that the charge criticised is erroneous. If the insulting conduct and the killing had occurred simultaneously, the charge might not have been injurious, but inasmuch as it was at the first meeting after the communication of the insulting conduct, the charge is not correct. Akin v. State, 56 Texas Crim.·Rep., 324. See also Tucker v. State, 50 S. W. Rep., 711. Those who feel inclined to ascertain the reasoning of the rule can read the opinions of the cases cited. There are quite a number of other authorities, but the Akin case so clearly states the proposition, and it being one of the latest enunciations of the doctrine by this court, it is deemed unnecessary to refer to prior decisions.

4. There are some bills of exception reserved to the introduction of matters occurring in the absence of the defendant, and. of which he had no knowledge, and which were in no way brought by the evidence to his knowledge. Some of these matters were of a nature to

show that the Fogles were in the wrong and the deceased not to blame for the difficulties that occurred between the Fogles and deceased. The trial court will understand without going into a discussion of these matters, that before such evidence can be introduced to affect the defendant's attitude in the case they must in some way be brought home to him.

For the errors indicated the judgment is reversed and the cause is remanded.

*Reversed and remanded.*